[Crim. No. 1049. In Bank.—May 7, 1904.]

## THE PEOPLE, Respondent, v. MINNIE ADAMS, Appellant.

CRIMINAL LAW—SEPARATION OF JURY AFTER SUBMISSION—INJURY—PRESUMPTION—BURDEN OF PROOF—NEW TRIAL.—The separation of the jury after submission of a criminal case, and after retiring to deliberate upon their verdict, entitles the defendant to a new trial upon the presumption of injury, if the absence of injury is not affirmatively proved by the prosecution.

ID.—INSTRUCTIONS—PROVINCE OF JURY—DUTY OF JUDGE.—The responsibility of determining whether or not the defendant should be found guilty rests entirely on the jury, and the judge, being prohibited by the constitution from charging as to matters of fact, should be careful in instructing the jury not to use language which might naturally be understood by the jury as intimating his opinion that the defendant is guilty, or as an argument against him.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. William P. Lawlor, Judge.

The facts are stated in the opinion.

Henry C. Dibble, and Dibble & Dibble, for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy Attorney-General, for Respondent.

McFARLAND, J.—The defendant was convicted of murder, the charge being that she murdered her infant child, a boy a little over two years old; and the prosecution contends that there was sufficient evidence to warrant the jury in finding that she willfully and feloniously caused the death of the child by giving it carbolic acid. Defendant contends that the

child took the poison accidentally, and without her knowledge. She appeals from the judgment and from an order denying her motion for a new trial.

The evidence on which the appellant was convicted was entirely circumstantial, and was undoubtedly conflicting, and she contends that it was insufficient to warrant the verdict; but it is not necessary for us to consider that point, because, in our opinion, a new trial must be granted on the ground of a separation of the jury after the case had been submitted to them.

The facts as to such separation are these: The cause was finally submitted to the jury on July 29, 1899, and the court directed the officer sworn to take charge of them, to take them to their meals during the day, and in the evening "to lock them up for the night together in one room," and he "was specially enjoined by the court to keep them together during the time that they should be deliberating upon their verdict, and not to let them separate." Instead of doing as the court directed, the officer, when night came, divided the jurors into three groups, and put them into three different rooms in a hotel, each room being on a different floor, or story; and they were thus separated and kept not only in three different rooms but on three different stories of the hotel, for about eight or nine hours. The officer testified that he locked the jurors in these separate rooms.

In some of the cases where this subject was involved courts had difficulty in determining whether the facts relied on constituted a "separation" within the meaning of the law; and it has been held that a mere momentary absence of one or two jurors, through necessity or accident, did not amount to such separation. But no such question arises in this case; there was here clearly a separation—the jurors having been willfully and intentionally kept apart in three separate groups for eight hours. Instead of sitting and consulting together as one jury, they were during this long time divided into three separate and distinct deliberative bodies, the members of each being prevented from conferring with those of either of the other two. Beyond doubt this was such a separation as the law forbids.

Under our law there is a marked difference between a separation during the progress of the trial and a separation after

CXLIII. Cal.—14

final submission of the case. As to the former there is no law requiring the jury to be kept together, although the court may order them to be so kept; and it is not necessary in the case at bar to consider the significance of a violation of such an order. But it is provided in the Penal Code (secs. 1128, 1135, 1136) that after the jury have finally retired for deliberation they must be kept together; and one of the express grounds for a new trial is "when the jury has separated without leave of the court after retiring to deliberate upon their verdict." (Sec. 1181.)

Whether such a gross violation of the law touching the separation of a jury as occurred in the case at bar should be held to be absolutely, and without any further inquiry, a cause for new trial, or whether the prosecution should be allowed to show, if it could, that nothing occurred during such extraordinary and prolonged separation prejudicial to defendant, is a question which does not here occur, for there was here no such showing. It is true that the officer testified that he "did not permit any person to speak to any member of the said jury," and did not permit any member of the jury "to speak to any person on any subject connected with the trial herein or about the case at all"; but it is evident that this statement was of no value, for, in the first place, he could not have been present at the same time at all the rooms on the three different stories, if he had kept awake, and, in the second place, he himself went to bed during a part of the night. Certainly in this case—if the law would countenance an attempt to show absence of prejudice—nothing less than the affidavits of the jurors would be sufficient to establish that fact.

And it is clear that the burden was not on appellant of proving affirmatively that she was prejudiced by the said separation of the jury. In this state the law on the subject was first declared in *People* v. *Backus*, 5 Cal. 275. In that case the court recited that in certain states it had been held that a mere separation of the jury would not be ground for setting aside a verdict without a showing of improper influence, and that in other states it has been held that such separation did invalidate a verdict without any showing of actual improper influence. The court then says: "The latter rule we think is the correct one, because it would be impossible in almost

every case for the prisoner to establish the fact of any cor-
rupt or improper communications between the jurors and
others. This doctrine is substantially sustained by the su-
preme court of Massachusetts in the case of the *Common-
wealth* v. *Roby*, 12 Pick. 519, and in a late case (decided in
Mississippi)—*Organ* v. *State*, 26 Miss. 78, in which the whole
doctrine is reviewed. In the latter case the court says: 'If
any separation is to be allowed without incurring the imputa-
tion of irregularity—for what length of time, and for what
purpose may it be; how frequently may it be practiced, and
to what distance may it extend—by what means are communi-
cations between the juror and other persons which may take
place, and which must necessarily be secret, to be disclosed?' "
In *People* v. *Brannigan*, 21 Cal. 338, the court decided that
"where the jury in a criminal action, after having retired to
deliberate upon their verdict, separated without permission
of the court, the irregularity is sufficient ground for setting
aside a verdict of guilty rendered by them, unless it be shown
affirmatively by the prosecution that the defendant was not
prejudiced thereby." In that case the court, by Field, C. J.,
said: "The district attorney appears to have considered it
incumbent upon the prisoner to show affirmatively injury to
himself resulting from the separation, or at least reason to
suspect such injury. There are authorities which support this
view. . . . But there are authorities of equal weight the other
way, and the latter, we think, are supported by better rea-
sons." Many cases are cited in the opinion, and, among
others, the *State* v. *Prescott*, 7 N. H. 287, where the court say:
"The prisoner is in such case entitled, as a matter of right, to
require, in the first instance, a compliance with the ordinary
forms provided by the law to secure to him a fair and im-
partial trial; and if the guards provided for his security are
neglected, or disregarded, he is at least entitled to require, at
the hands of the government, satisfactory evidence that he
has not received detriment by reason of such neglect, and is
not to be put to show, affirmatively, that such departure from
the customary mode of trial has been the probable cause of
his conviction." In *People* v. *Hawley*, 111 Cal. 78, it was
held that a separation of a jury after the final submission in
a criminal case vitiated the verdict, even though the defend-
ant had consented to the separation. The court there say:

"The separation of the jury after they are sworn, even during the trial, was never permitted at common law in cases of felony, and in many states is not now permitted in capital cases. Our statute permits such separation in all cases before the submission of the case, in the discretion of the court, but expressly provides that after retiring to deliberate upon their verdict, they must be kept together. (Pen. Code, sec. 1128.) The court, therefore, had no authority, either under the statute or at common law, to permit the separation, nor could the consent of the defendant or his counsel operate to empower or excuse the violation of an express provision of the statute." Many cases are cited and quoted from in the opinion, and, among others, *Peiffer* v. *Commonwealth*, 15 Pa. St. 468,[1] where the eminent Chief Justice Gibson, delivering the opinion of the court, said: "Even the forms and usages of the law conduce to justice; but the common law, which forbids the separation of a jury in a capital case before they have been discharged of the prisoner, touches not matter of form, but matter of substance. It is not too much to say that if it were abolished few influential culprits would be convicted, and that few friendless ones, pursued by powerful prosecutors, would escape conviction." (The authorities on the subject are very fully collated in Spelling's New Trial and Appellate Practice, commencing at section 151, and also at section 59.)

The foregoing cases established the law in this state as above stated. The only case cited by respondent is *Saltzman* v. *Sunset Tel. etc. Co.*, 125 Cal. 501. That was a civil case, and the court in its opinion calls attention to the fact that while the separation of the jury after submission is itself ground for a new trial in a criminal case, there is no such provision as to a civil case. In a civil case the separation of the jury can be considered on motion for a new trial only on the general ground of "misconduct." In the Saltzman case the officer in charge had allowed one juror to communicate for a few minutes to an outside party through a telephone which was in the room where all the other jurors were, and there was really no separation of the jury. The officer stood beside the juror and heard all he said through the telephone, and it was shown by affidavits that the communication was to

[1] 53 Am. Dec. 605.

the juror's family, and entirely about private matters; and it was held that it sufficiently appeared that the misconduct was without significance. But the law, even in civil cases, was there announced as follows: "The rule in this state, I take it to be, in civil cases, that a separation against the instruction of the court, with evidence that improper influence might have been brought to bear upon the juror, puts the burden upon the party seeking to sustain the verdict to negative the presumption and show that no such attempt was made. I think that was done in this case." The circumstances of a separation in a particular case might possibly be such as to themselves show that no prejudice to the defendant could have resulted, and in such case a court perhaps would be warranted in upholding the verdict notwithstanding the direct violation of an express provision of the code intended for the protection of a defendant; but we need not pass upon that question, for it does not arise in the case at bar. On account of the separation of the jury shown in the present case the order denying a new trial must be reversed.

There are no other points necessary to be determined. It is contended that instruction No. 10, upon the subject of circumstantial evidence, is erroneous within the rule declared in *People v. Vereneseneckockockhoff*, 129 Cal. 497; but it is not necessary to definitely determine that question. If upon another trial the court deems it proper to instruct at all upon the subject of circumstantial evidence, it can easily modify the instruction so as to avoid the criticisms of appellant's counsel. It may be said, generally, that the responsibility of determining whether or not a defendant in a criminal case should be found guilty rests entirely upon the jury, and that the presiding judge, not having that responsibility, and being prohibited by our constitution from charging as to matters of fact, should be careful, in instructing, not to use language which might be naturally understood by the jury as intimating his opinion that the defendant was guilty, or as an argument against him.

The judgment and order appealed from are reversed and the cause remanded for a new trial.

Shaw, J., Angellotti, J., Van Dyke, J., Henshaw, J., and Lorigan, J., concurred.