STATE, Respondent, *v.* DeTONANCOUR et al., Appellants.
(No. 8,147.)

(Submitted April 8, 1941.   Decided May 2, 1941.)
[112 Pac. (2d) 1065.]

*Mr. J. D. Taylor,* for Appellants, submitted a brief, and argued the cause orally.

*Mr. John W. Bonner,* Attorney General, *Mr. Fred Lay,* Assistant Attorney General, and *Mr. Clyde F. Hayden,* County Attorney of Ravalli County, for the State, submitted a brief; *Mr. Lay* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by defendants from a judgment of conviction of the crime of grand larceny and from an order denying their motion for new trial. The specifications of error raise several points for consideration. The first point relied upon is that the court erred in denying their motion for nonsuit. This motion attempts to raise the question of the sufficiency of the evidence to justify submission of the case to the jury.

The evidence is circumstantial. The substance of the evidence is that shortly after noon on the 14th day of October, 1939, the defendants, who live in Missoula, went in two cars—a Terraplane belonging to the defendant Louis DeTonancour, and a Studebaker belonging to defendant Joe DeTonancour—to the home of Ernest Goudette, Sr., in Ravalli county, about ten miles from Stevensville. They learned that the two Goudette boys, Ernest, Jr., and Arthur, who live with their father, were in Hamilton. After dinner Goudette, Sr., and the five defendants went hunting. They drove in the Terraplane to a part of

the Peterson ranch, which is about three miles east of the Goudette place. While there, defendants Louis DeTonancour and Bristow got out of the car, and started driving a sow and five, six or seven little pigs, and defendant Harry DeTonancour called for a gun and stated he was going to shoot the hog. Defendant Joe DeTonancour protested, saying he would walk home if they killed it, and that it would spoil the whole thing; "that one wasn't enough for a whole bunch." The hunting trip was of short duration, and they then returned to the Goudette place. Goudette, Sr., and defendants Louis DeTonancour and Bristow then went to Hamilton in the Terraplane, looking for the Goudette boys. From Hamilton they went to Victor where they remained until about dark. The other three defendants were at the Goudette place when Goudette, Louis DeTonancour and Bristow returned. The two Goudette boys remained in Hamilton on the afternoon of the 14th until dusk. They then drove to Stevensville where they remained until after midnight, and then went home. They stopped at Bill Haynes' and did not get home until four or five o'clock Sunday morning, October 15. When they reached home, the five defendants were there.

On the evening of the 14th, neighbors saw two cars driving east from the Goudette place. Some of the witnesses recognized the cars as a Terraplane and a Studebaker. The Studebaker either had a broken muffler or the cut-out was open so that it made a peculiar noise. There were three people in the front seat of one car and two people in the front seat of the other. One of the witnesses identified Joe DeTonancour as one of the occupants of the Studebaker. Another witness recognized defendant Bristow as one of the men in the first car. About 8:30 or 9:00 P. M. the cars returned. Witnesses could tell by the noise of the Studebaker that it was the same car they saw going east earlier in the evening. The road from the Goudettes' to the Peterson place was not traveled very often by cars.

On Sunday morning the two Goudette boys and defendant Louis DeTonancour drove to Victor. In the afternoon the two

Goudette boys went hunting with the defendants. About 5 or 5:10 that evening defendants left for Missoula.

On Monday, October 16, Emil Peterson, who lives three miles east of the Goudette place, discovered the entrails of five hogs on that part of his ranch called the Wickham place. It appeared that the hogs had been recently killed. He also discovered the entrails of three other hogs which appeared to have been killed a few days before. Tracks on the ground indicated that two cars had been there and turned around in the road. The hogs had been dragged to the road where the tracks indicated the cars had turned around.

On the 17th of October molds were made of automobile tracks near the entrails, disclosing that one of the tracks was smooth. There was testimony that the tires on one of appellants' cars were worn smooth and answered the description of the tires that made the tracks from which the mold was taken.

On January 9, 1940, at the home of one of defendants in Missoula, there was found pork which had been skinned and pickled in brine in two kegs. The Goudette boys testified that they saw a hog on October 16, reddish in color and partly skinned, in the home of Joe DeTonancour in Missoula. Some of the foregoing evidence was disputed, but that simply made the question one for the jury.

The defendants contend that the evidence, taken as a whole, does nothing more than prove an opportunity to commit the crime alleged, and at most raises a suspicion of guilt. They contend that their motion for nonsuit should have been sustained. Under our practice in criminal cases motions for nonsuit are not proper to raise the question of the sufficiency of the evidence. The proper practice is prescribed by section 11995, Revised Codes. But if we assume that such a motion be proper it was properly denied on its merits. The circumstantial evidence was sufficient to make a case for the jury. In determining the sufficiency of circumstantial evidence to make a case for the jury and to sustain a conviction, all of the facts and circumstances must be taken into consideration collectively.

(*State* v. *Francis,* 58 Mont. 659, 194 Pac. 304.)    When so taken, it was sufficient to justify submission of the case to the jury.

Defendants also contend that their motion for new trial should have been granted because the evidence was insufficient to warrant the verdict of guilty.

In addition to the foregoing evidence, defendants' proof showed that they brought five hogs to Missoula on their return from the Goudette ranch, but assert that they purchased them from Ernest Goudette, Jr.; but this was denied by Ernest Goudette. It was for the jury to determine who was telling the truth in this respect. We are unable to say that the evidence does not warrant the verdict.

Defendants assign error in admitting the pickled pork in evidence. Since the evidence shows that it is unusual to skin pork, the usual method being to scald and scrape, this evidence was properly admitted as a link in the chain of circumstances tending to show the commission of the offense by defendants under circumstances which would not permit scalding. It was for the jury to determine, in the light of the explanation of defendant in whose possession the pork was found, whether it had any probative value in proving the offense. If it was not sufficiently identified as being stolen property, then its admission in evidence would have been harmless.

The defendants urge that the court erred in permitting the jury to separate for lunch between the giving of the instructions and the arguments of counsel. They ground their contention upon the language of the statute, section 12005, Revised Codes, which reads as follows: "After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, an officer must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor to do so himself, unless by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court."

The purpose of the legislature in enacting section 12005 was to keep the jury together from the time the case is submitted to them until the rendition of a verdict. (*People* v. *Adams*, 143 Cal. 208, 76 Pac. 954, 66 L. R. A. 247, 101 Am. St. Rep. 92.) By giving strict effect to the language of the section, the jury after being instructed could then retire and deliberate without hearing the oral arguments. But section 11969, Id., specifically provides for oral arguments after the instructions have been given to the jury. The reason for this seeming conflict is easily understandable when we refer to the history of our sections. Section 12005 was adopted verbatim from California (Cal. Penal Code, sec. 1128), and section 11969 was taken substantially in the same language as section 1093 of the California Penal Code, but was changed in one important particular. The California section provides that the arguments of counsel, if any, shall precede the charging of the jury, thereby making the two California statutes in complete harmony with each other to effectuate the purpose sought. However, our section 11969 provides that the arguments shall come after the charge to the jury, thus making possible a conflict with section 12005. Also, if defendants' construction of section 12005 were adopted, such section would conflict with section 11998, Revised Codes, which reads as follows: ''The jurors sworn to try an action may, at any time before the submission of the cause to the jury, in the discretion of the court, be permitted to separate or be kept in charge of a proper officer,'' etc. This section was adopted by the legislature in 1895, some twenty years after the adoption of section 12005, and impliedly repeals section 12005, so far as the two are in conflict, and shows a legislative purpose to permit separation of the jury in the discretion of the court at any time before the case is submitted to it. It was not error to permit the jury to separate after the charge but before the arguments of counsel.

The judgment and order are affirmed.

Mr. Chief Justice Johnson and Associate Justices Erickson, Anderson and Morris concur.