STATE, Respondent, *v.* ROSSELL, Appellant.

(No. 8,277.)

(Submitted June 22, 1942.   Decided July 2, 1942.)

[127 Pac. (2d) 379.]

458

*Mr. C. C. Guinn,* for Appellant, submitted a brief and argued the cause orally.

*Mr. John W. Bonner,* Attorney General, *Mr. Howard M. Gullickson* and *Mr. Fred Lay,* Assistant Attorneys General, and *Mr. Bert W. Kronmiller,* County Attorney of Big Horn County, submitted a brief; *Mr. Lay* argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

The defendant Rossell has appealed from a conviction of the crime of grand larceny. The alleged theft involved a red cow with the brand of "T" on the right hip, "X" on the right ribs, and "4" on the right shoulder. The evidence discloses that the cow was purchased by John McNierney and shipped along with 36 other cows into Montana. The cow, upon being received in Montana, was placed upon the range in Big Horn county near what is known as Eagle Springs. Ed Light was in charge of the cattle belonging to McNierney in Montana.

The defendant, who ran a bunch of cattle in Big Horn county, was engaged in moving them to Yellowstone county. While camped at Eagle Springs, a stock inspector named Clements came to defendant's camp on December 9, 1938, to inspect defendant's herd. At that time there was with the herd held by the defendant a red cow with a white face, or, as Clements said "brockled-face—white face," bearing the "TX4" brand. At that time the defendant told Clements that that particular cow belonged to Ed Light. About December 16, 1938, Light missed a red white-faced "TX4" cow. He looked for her but could not find her.

On December 6, 1939, a man by the name of Harris was engaged by the defendant to haul several cows from a ranch near Castle Butte, in Yellowstone county, to Billings. Harris testified that among these cows was a "red white-faced" cow with

a "TX4" brand and a Diamond X brand on the left hip. This Diamond X brand was referred to by other witnesses as a "fresh" brand.

The defendant sold this load of cows to the Billings Livestock Commission, but in making the sale he had difficulty in regard to a bill of sale for the "TX4" cow. The stock inspector at Billings asked the defendant for a bill of sale which the defendant did not have at the time, but he later produced one which was made to him from a person named F. F. Ferrell. The secretary of the Livestock Commission wrote a letter to Ferrell in Hardin with reference to the sale of the "TX4" cow to the defendant. The secretary received a reply written on the back of the letter, which read: "Sold Mr. Rossell the cow. I have no recorded brand. I raised the cow." The secretary tried to get in communication with Ferrell again but was unsuccessful. He enlisted the aid of the defendant and the sheriff's office in an endeavor to locate Ferrell, but nothing was thereafter heard about him.

In addition to the above, the state proved a confession on the part of Rossell wherein he admitted stealing the cow in Big Horn county and driving her to Yellowstone county, branding her with the "Diamond X" and later selling the animal as his own to the Billings Livestock Commission.

The first contention of the defendant on appeal is that the court erred in not granting his motion for a directed verdict. The basis of the motion was the failure of the state to prove the *corpus delicti* in so far as Big Horn county was concerned. He urges that without the aid of the confession, there is no evidence that any element of the crime occurred in Big Horn county. Before addressing ourselves to this question, we find it well to state that the *corpus delicti* can be established by circumstantial evidence. (*State* v. *Kneeland*, 39 Mont. 506, 104 Pac. 513; *State* v. *Broell*, 87 Mont. 284, 286 Pac. 1108.)

It is true that in this case the possession of the cow by defendant in his herd in Big Horn county near Eagle Springs is, standing alone, not incriminative. However, when it becomes es-

tablished that the defendant later had dominion and control over and sold the animal as his own in Yellowstone county, then the facts which occurred in Big Horn county take on a meaning which is indicative of a criminal act. We think the combination of the facts is sufficient to raise an inference that the crime was committed in Big Horn county. This court has said in the case of *State* v. *Francis,* 58 Mont. 659, 194 Pac. 304, 307: "The rule as to circumstantial evidence is that the circumstances proven to establish guilt must be taken as a whole; and if, considered as a whole, they are 'inconsistent with any rational hypothesis' other than the defendant's guilt, they are sufficient to warrant a verdict of guilty." (See, also, *State* v. *Dixson,* 80 Mont. 181, 260 Pac. 138; *State* v. *De Tonancour,* 112 Mont. 94, 112 Pac. (2d) 1065.) In this case we think the evidence was sufficient, without aid of the confession, to justify the court in refusing to grant the defendant's motion.

In what we have said above we have not treated with the question of ownership and identification of the animal alleged to have been stolen. The defendant makes several contentions of error upon this point. To avoid repetition we shall consider the merits of these contentions together.

The evidence, without the aid of the confession, shows that ▉ McNierney purchased the 37 head of TX4-branded cattle from one Anderson, who in turn had purchased them from the original owner of the "TX4" brand. McNierney shipped these cattle from Chambers, Arizona, to his agent Light in Big Horn county. They were placed on the range near Eagle Springs in December, 1938. The stock inspector, Clements, described the cow which was in defendant's herd at Eagle Springs—the color, the fact that she was a "southern" cow, the brand and that she was a "brockel-face—white face." Ed Light testified that he missed one of these 37 head of cattle—a small red white-faced cow—shortly after Clements had seen the "TX4" cow in the defendant's herd. He said that the cow he missed was never again seen by him and that the hide of the cow the defendant had sold to the Livestock Commission corresponded with the

animal which he had lost. In addition to this testimony, Light said that the 37 "TX4" animals belonging to McNierney were to his knowledge the only so branded cattle in that part of the country, and that he accounted for all of the others except the one which he missed in December, 1938. We think that this evidence clearly demonstrates ownership and identification for the purpose of proving a larceny. (*State* v. *Akers*, 106 Mont. 43, 74 Pac. (2d) 1138; *State* v. *Grimsley*, 96 Mont. 327, 30 Pac. (2d) 85.)

The defendant contends that there was a variance between the information and the proof in that the information charges the theft of a "white-faced" cow while the evidence referred to a "brockel-faced" cow being seen in the possession of the defendant in Big Horn county. This is not accurate. The witness Clements decribed the animal as a "brockel-faced—white-faced." The evidence shows that these 37 head of cattle were of a "white face" breed. It is true that the red and white may vary in some of the animals as to location and spots, but we think the cow was amply described in the evidence to be a white-faced cow. (See *People* v. *Hutchings*, 8 Cal. App. 550, 97 Pac. 325.)

The defendant also contends that the court erred in giving the following instruction: "If you find that the animal in question was owned by and brought into this state by John McNierney, and if while within the state he claimed to own same and treated the animal as his property and if there is no evidence of ownership in any other person then you are justified in concluding that the ownership of the said property remained in said John McNierney."

The argument is that this instruction is tantamount to advising the jury that it should not consider any other evidence as to the question of ownership excepting the evidence that McNierney brought the animal into the state and that while within the state he claimed to own the same and treated it as his property. The effect which the defendant claims the instruction has, obtains only "if there is no evidence of ownership in any other per-

son.'' This instruction does not ignore part of the evidence (that the defendant showed evidence of ownership in F. F. Ferrell), but expressly recognizes the possibility of its existence. The jury evidently did not treat the evidence of ownership in F. F. Ferrell as credible evidence.

Again, in referring to the question of ownership, the defendant complains that the court erred in refusing to give the following instruction: ''You are instructed that it is incumbent upon the State to prove to your satisfaction beyond a reasonable doubt, that the steer described in the information was the property of John McNierney at the time of the alleged wrongful taking thereof, and if, after considering all the evidence in the case, you entertain a doubt as to whether such steer was the property of John McNierney as alleged, and such doubt is sufficient to divest your mind of proof thereof beyond a reasonable doubt as above instructed, then you shall give the defendant the benefit of such doubt and acquit him.''

The court gave the following instruction in regard to ownership; ''* * * It is sufficient if you are satisfied beyond a reasonable doubt that the cow in question was the property of John McNierney and that the defendant with intent to steal the same and to deprive the true owner thereof did take, carry, drive, lead or entice away the same.'' (Instruction No. 12.) We think the instruction given was sufficient, along with the other instructions when taken as a whole, correctly to direct the jury upon the question of ownership. (See *State* v. *Houk,* 34 Mont. 418, 87 Pac. 175; *State* v. *De Lea,* 56 Mont. 531, 93 Pac. 814; *State* v. *Byrd,* 41 Mont. 585, 111 Pac. 407.)

Next the defendant urges that the court erred in refusing to give the following instruction: ''The court instructs the jury that if, after a full consideration of the entire evidence in this case, any juror should entertain a reasonable doubt of the guilt of the defendant, it is the duty of such juror so entertaining such doubt not to vote for a verdict of guilty, nor to be influenced in so doing for the single reason that a majority of the jury should be in favor of a verdict of guilty. In this

connection you are instructed that juries are empaneled for the purpose of agreeing upon verdicts if they can conscientiously do so. They are admonished at each recess of the court not to form an opinion as to the merits of the case until it shall be finally submitted to them, and when it is so submitted, it is the duty of jurors to deliberate and consult together with the view of reaching an agreement if they can without violence to their individual understanding of the evidence and instructions of the court. It is true that each juror must decide the matter for himself, yet he should do so only after a consideration of the case with his fellow jurors, and he should not hesitate to sacrifice his views or opinions of the case when convinced that they are erroneous, even though in so doing he defer to the views or opinions of others.''

The gist of defendant's argument is that the jury, absent the proposed instruction, were not properly instructed as to their relationship to one another and to their duty in considering the evidence in the case. That this instruction is a correct statement of the law, the defendant relies upon *State* v. *Howell*, 26 Mont. 3, 66 Pac. 291, 292. The deciding factor upon this question is whether the instructions, taken as a whole, have deprived the defendant of any right he may have had in the manner in which the evidence must be considered. We think his rights have been fully protected here. The language used in *State* v. *Howell*, supra, is pertinent here:

''Nor was it error to refuse the instruction touching the duty of the individual jurors, although they embodied a correct statement of the law. The propriety of giving such an instruction was considered in *State* v. *Hurst*, supra, [23 Mont. 484, 59 Pac. 911]. We adhere to the doctrine stated in that case. Of course, each juror must act upon his own convictions. He must not surrender them merely because others of the jury have reached a different conclusion upon the evidence, though he may be aided by his fellow jurors in arriving at the truth. If in this particular case the court was in error in refusing to submit the instruction requested, it must

necessarily follow that a court should instruct the jury as to their individual duties in all cases when requested, or else we must conclude that it was error in the court to refuse to submit the instruction requested in this case merely because counsel for defendant was of the opinion that the jury required it. As was said in *State* v. *Hamilton*, 57 Iowa 596, 11 N. W. 5: 'A jury need not be advised of so simple a proposition. The usual method of instructing upon the measure of proof required in criminal cases is sufficient.' Furthermore, each juror was sworn at the beginning of the trial to well and truly try the issue, and a true verdict render according to the evidence.''

The only other specification of error is that the court erred ▋▋▋ in allowing the defendant's confession to be received in evidence. The basis of this contention is that the confession was involuntarily made. The act which induced this confession was that the defendant was informed by the officers that the stock inspector at Billings did not have any bill of sale for the cow alleged to have been stolen and which the defendant had sold. This untrue statement, the defendant urges, led him to believe that his principal defense (claim of ownership) to the crime charged against him was lost.

The test as to whether a confession is admissible is stated in the case of *State* v. *Dixson*, supra. In that case the court said: ''The test to be applied in determining whether a confession of one on trial for crime, made while in custody, and asserted to have been made under inducement is: ''Was the inducement held out to the accused such as that there is any fair risk of a false confession?''

When we examine the inducement in the present case, we find a man confessing to a crime because he had been erroneously informed that a possible defense to the crime charged is not present. It appears to us that if the defendant was innocent and did in fact buy this animal from another by way of a bill of sale, the defendant would steadfastly maintain his innocence with the knowledge that the bill of sale would protect him because

he knew that there was a bill of sale even though it was reported to him that it was non-existent.

In the case of *State* v. *Dixson,* supra, the court says further: "'The question whether an alleged confession of one charged with crime made while in custody was voluntarily made depends largely upon the particular facts in each case, its admissibility in evidence is a matter for the trial court's determination in the first instance and its finding thereon will not be disturbed on appeal unless clearly against the weight of the evidence.''

We find here that the evidence produced by the state without the confession is consistent with the statement made by the defendant in confessing the crime, and we cannot say that the court erred in admitting the confession in evidence.

Finding no error in the record, the judgment must be affirmed.

Mr. Chief Justice Johnson and Associate Justices Anderson and Morris concur.

Mr. Justice Angstman did not hear the argument and takes no part in the above decision.