[No. 17263-8-I. Division One. May 4, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES ARTIS BROWN, *Appellant.*

566

C. M. Hassenstab of Washington Appellate Defender Association, for appellant.

Norm Maleng, Prosecuting Attorney, and Saul Gamoran, Deputy, for respondent.

PEKELIS, J.—James Artis Brown appeals his conviction for theft in the second degree. He alleges that the trial court erred in admitting extensive evidence of two prior thefts under ER 404(b), in its pretrial ruling permitting the State to impeach him with statements he made to his parole officer, and its decision to permit the State, under ER 609, to impeach him with prior convictions. In a separate motion which was consolidated with this appeal, Brown also appeals the resulting sentence on the ground that the trial court improperly computed his offender score.

Brown was charged with two counts of theft in the second degree. The thefts occurred at different times and had different victims. The jury found Brown guilty on count 2,

which involved Katherine and John Gentry, but returned a verdict of not guilty on count 1, involving an alleged incident with Orville Marsh.

The State's evidence in the Gentry theft consisted primarily of Katherine and John Gentry's testimony. Katherine Gentry claimed that a man, whom she later identified as Brown, approached her on December 17, 1984, and offered to sell her televisions and VCR's at substantially reduced rates. After agreeing to purchase a television and VCR, Katherine Gentry drove Brown to first obtain cash and then the equipment shortly after 6 p.m. The time is substantiated by the time stamped on the exchange receipt. Mrs. Gentry chauffeured Brown to several sites where Brown claimed the equipment was located. At the last location, Brown left the car and never returned. Two days later, on December 19, Brown called Katherine and asked what had happened to her. He informed her that he still had the merchandise.

On December 30, Brown again approached the Gentrys. This time, John Gentry drove Brown to obtain the merchandise. At that time, he noticed that there was a scar on the left side of Brown's neck. When they arrived at the place the merchandise was allegedly located, John Gentry gave Brown an additional $40 to secure the merchandise. Brown, however, did not return to the car. After the Gentrys reported the theft, the investigating detective asked them separately to identify the person they had dealt with. Each picked Brown from a properly prepared photo montage.

Brown denied that he was the perpetrator of the crime and offered an alibi defense. He claimed he was working at Imperial Carpet the night of December 17. This defense was elicited through the testimony of Robert Kramer and Diane Oliver. Kramer testified that he hired Brown periodically to help lift the rolls of carpet and though he kept no records of Brown's employment, he remembered the day because it was a week before Christmas and Brown asked him where he could get a Christmas tree. Kramer could not

recall with specificity any other days that Brown had worked in the month of December.

Diane Oliver testified that Brown had given her a Christmas tree on the day in question. She remembered the date because she happened to be making candy on that particular day. Both the carpet place and tree lot were within walking distance of Oliver's house.

The Marsh theft, count 1, involved a similar situation. There, the State alleged that Brown approached restaurateur Orville Marsh and his son–in–law Arnold Field in the parking lot of Marsh's restaurant. He asked whether they would be interested in purchasing televisions and VCR's at substantially reduced rates. Marsh and Field agreed to purchase the merchandise for cash. Brown parked his pickup in the restaurant parking lot and went in Field's car to procure the items. Like the Gentrys, Field gave Brown cash to obtain the merchandise and waited in his parked car in vain for Brown to return with the equipment. Two days later Marsh again saw Brown who wanted his pickup back.

Neither Marsh nor Field were able to identify Brown from a photo montage. In fact, there was some evidence that Marsh had picked out the wrong photograph. Nonetheless, both Marsh and Field made a positive in–court identification of Brown.

Brown's defense to this episode was identity. He claimed his nephew's friends had taken his car the day of the Marsh theft. Testimony on his behalf included the fact that he was suffering on that day from a boil on his right foot and that he would have had a noticeable limp. The person who drove him to pick up his car at Marsh's restaurant also testified that he was wearing only one shoe. When Marsh described the perpetrator, he failed to mention such obviously distinctive features.

In addition to the testimony of the victims of counts 1 and 2, the State's case in chief included testimony of two previous victims of Brown, Star Johnson and David Betz. Both of these incidents had resulted in misdemeanor theft

convictions of Brown. Johnson and Betz each testified that Brown approached them and offered to sell them salvaged televisions and VCR equipment for cash. In each case, the victim drove Brown to a location and waited in vain for him to return with the equipment. Like the Gentrys, both were again·approached by Brown and promised the merchandise. Betz and Johnson identified Brown as the person who had duped them. This testimony was presented as supplemental proof of identity.

The jury found Brown guilty on count 2 and not guilty on count 1. He was sentenced under the Sentencing Reform Act of 1981 (SRA) to 12 months' confinement.

## ER 404(b) EVIDENCE

Brown brought a motion in limine to exclude testimony by the victims Johnson and Betz regarding the incidents, allegedly similar to the crimes at issue, which resulted in Brown's two misdemeanor theft convictions. The State argued that this testimony was admissible under ER 404(b).[1]

In admitting evidence of prior crimes or bad acts, the courts have utilized the test of whether it is relevant and necessary to prove an essential ingredient of the crime. *State v. Laureano,* 101 Wn.2d 745, 682 P.2d 889 (1984). Once a proper purpose is found, the trial court should determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *State v. Saltarelli,* 98 Wn.2d 358, 655 P.2d 697 (1982).

The trial court determined that the prior thefts contained a number of distinctive characteristics common to the case at bar and were thus admissible under ER 404(b) as probative on the issue of identity. The court, on the record, also recognized the inherent prejudicial nature of

---

[1]ER 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

these prior crimes, but stated that the probative value in this instance outweighed any prejudicial effect. In addition, prior to allowing the testimony of Johnson and Betz, the court specifically warned the jury that the testimony was only to be considered as to whether it proved a common plan or scheme as an essential element of the crime charged. In so ruling, the trial court limited the purpose for which the jury could consider the evidence in conformance with *State v. Giffing*, 45 Wn. App. 369, 725 P.2d 445 (1986); *State v. Gatalski*, 40 Wn. App. 601, 699 P.2d 804 (1985).

The distinctive features of these incidents include: (1) Brown's "sales pitch" to each victim; (2) all of the victims drove Brown to locations in the same section of Seattle where they were told to wait for him; (3) in each case, he did not return; (4) all merchandise was described as salvaged; and (5) he returned to his victims shortly after each incident. Each of the victims also testified that Brown was a smooth talker and eminently believable. Since evidence of the common scheme or plan is relevant to the issue of identity, this evidence was probative, and the trial court's analysis and ruling was proper.

## IMPEACHMENT EVIDENCE

We turn now to the question of whether the trial court erred in its pretrial rulings permitting the State to utilize prior convictions and statements of Brown to his parole officer, Marrs, to impeach him if he testified.

First, Brown assigns error to the trial court's determination at the CrR 3.5 hearing that these statements to Marrs were voluntary. At the CrR 3.5 hearing, Marrs testified that Brown called him and asked to see him to discuss Brown's parole violation case. Marrs agreed. During the discussion, Brown said, "I could tell you some things", but also opined that it would probably be used against him. Marrs responded that he didn't think the Board or anyone else was particularly interested in his modus operandi. Brown then went on to describe past incidents where he had conned several people into buying products similar to the

case at bar. No specific details were elicited as to names or particular crimes during this conversation. The court held that Brown's admissions to Marrs were voluntary.[2]

The test for voluntariness of a confession is whether the officer's behavior overcame the will to resist and brought about an admission by the defendant. *State v. Riley,* 17 Wn. App. 732, 565 P.2d 105 (1977). Brown initiated the contact with his parole officer and had what the parole officer termed an "open conversation." Brown contends that Marrs' assurance that nobody cared about his modus operandi induced him to make a statement against his will. The testimony adduced at the CrR 3.5 hearing did not in any manner suggest that Marrs' statement to Brown that nobody cared about his modus operandi was so overpowering that it overcame Brown's will. Marrs' words, though ill advised, cannot be deemed a bona fide promise to the defendant. The statements were voluntarily made.

The State proposed to use this testimony to impeach Brown on the basis of prior inconsistent statements. The court deferred ruling on the admissibility of Marrs' testimony stating that it would depend upon Brown's testimony. However, the trial court did give appropriate examples of questions that would trigger the use of Marrs' testimony for purposes of impeachment. There was no offer of proof which specifically stated that Brown would have denied a modus operandi such as the one described in Marrs' testimony but for the court's ruling. The court properly ruled that the admission of Marrs' testimony for purposes of rebuttal was dependent upon Brown's actual testimony.

The second area of impeachment to which defendant assigns error is the trial court's determination that Brown's

---

[2]The State concedes that Brown was not given his *Miranda* warnings. Although the State may not use such statements in its case in chief, statements made to a parole officer may be used to impeach a defendant if the defendant takes the stand and makes a statement inconsistent with that previously given. *State v. Davis,* 82 Wn.2d 790, 793, 514 P.2d 149 (1973) (citing *Harris v. New York,* 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971)).

three prior convictions could be used to impeach him, pursuant to ER 609. These convictions included the two misdemeanors involving Betz and Johnson and a felony conviction of theft in the second degree on March 30, 1982. All three were guilty pleas by Brown.

The trial court ruled that the prior theft convictions involved dishonesty and therefore were admissible for the purposes of impeaching defendant. This analysis is erroneous. ER 609(a) provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross examination but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

Since misdemeanors are not punishable by terms of over 1 year, Brown's two misdemeanor convictions must fall under ER 609(a)(2), that is, involve dishonesty or false statements, to be deemed admissible. Prior convictions admitted for impeachment purposes must have some relevance to the defendant's ability to tell the truth. *State v. Jones,* 101 Wn.2d 113, 677 P.2d 131 (1984). A petty theft conviction has been held not to be evidence of dishonesty. *State v. Burton,* 101 Wn.2d 1, 676 P.2d 975 (1984). (*See also Jones,* at 123, holding that "theft . . . convictions have very minimal probative value with respect to the petitioner's propensity for truthfulness.") Thus, to the extent the trial court assumed that the misdemeanor thefts were per se crimes of dishonesty under ER 609(a)(2), this was error.

■ However, since quite specific details of these misdemeanor crimes were introduced in evidence under ER 404(b), we are able to determine that these were, in fact, crimes of dishonesty and the trial court's ruling can be upheld. As detailed above in this opinion, Brown's prior convictions involved theft by deception and are, therefore,

inextricably related to his ability to tell the truth. The mere nomenclature attached to a crime should not in itself preclude its admissibility where the specific facts of the crime demonstrate that it is a crime of "false statement."

However, the record does not reveal any such information regarding the felony theft conviction. There is no indication of whether that crime involved circumstances, like the misdemeanors, probative of Brown's credibility. Although as a felony conviction, it might be admissible under ER 609(a)(1), this requires a balancing between probativeness and prejudice on the record. Without this, the court's ruling cannot be upheld. *State v. Jackson,* 102 Wn.2d 689, 694, 689 P.2d 76 (1984).

■ Nevertheless, we find that the court's ruling regarding the admissibility of the felony conviction is harmless. The Supreme Court in *State v. Jones, supra* at 113, adopted the constitutional standard for determining whether error under ER 609(a)(1) is harmless. The test is whether the appellate court is convinced beyond a reasonable doubt that the untainted evidence is so overwhelming that it necessarily led to a finding of guilt.

In the instant case, Brown was found guilty only on count 2, the Gentry theft. The evidence presented by the Gentrys alone was clearly sufficient to identify Brown as the perpetrator in their case. The Gentrys, who had spent a good deal of time with the perpetrator of the theft against them, individually picked out Brown from a photo montage, identified him in the courtroom as the person who had duped them into giving money for salvaged merchandise and specifically noticed a scar on Brown's left side of his neck. The untainted evidence was overwhelming. In addition, there was extensive evidence of the two misdemeanor thefts before the jury, and it is difficult to imagine that a third conviction would have unduly influenced them. The trial court's error is harmless beyond a reasonable doubt.

## SENTENCING

In a motion for accelerated review brought pursuant to

RAP 18.15, Brown contends that the trial court erred in establishing his offender score for the purpose of setting his sentence. He argues that it was error to include a 1960 Dyer Act conviction in his criminal history. Although Brown concedes that the acts for which he was convicted translate into a felony under Washington law, he argues that he was sentenced as a youth offender under federal law and thus this should not be included in his offender score.

The classification of a crime in another jurisdiction is not the barometer by which these offenses are computed under the SRA. Former RCW 9.94A.360(12) provides in pertinent part:

> The designation of out–of–state convictions shall be covered by the offense definitions and sentences provided by Washington law.

Thus, it is Washington's designation of a felony and the sentence which Washington would impose that is the criterion in sentencing under the SRA. At the time Brown stole the automobile, he was 21 years of age. The mere fact that he was sentenced as a "youth offender" under federal law does not make his crime a juvenile conviction under the sentencing reform act.

The trial court is affirmed.

SWANSON and GROSSE, JJ., concur.

Review granted by Supreme Court December 2, 1987.