No. 88-498

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

STATE OF MONTANA,

       Plaintiff and Respondent,

  -vs-

JESSE JAMES HIGAREDA,

       Defendant and Appellant.

---

APPEAL FROM:  The District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        McKinley Anderson, Bozeman, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
George M. Schunk, Asst. Atty. General, Helena
A. Michael Salvagni, County Attorney, Bozeman, Montana
Marty Lambert, Deputy County Attorney, Bozeman

---

Submitted on Briefs:  April 27, 1989

Decided:  July 11, 1989

Filed:

_____
              Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

A jury empaneled in the District Court of the Eighteenth Judicial District, Gallatin County, found Jesse James Higareda, the defendant, guilty under § 45-6-204, MCA, of the offense of burglary. The District Court sentenced defendant to the Montana State Prison for a term of 15 years with five years suspended and credit for time served. Defendant appeals. We affirm.

The issues raised on appeal are:

1. Whether the District Court erred in denying defendant's motion to suppress statements made to an arresting officer.

2. Whether the District Court erred in admitting testimony of defendant's parole officer during a jury trial.

On February 29, 1988, at approximately 3:00 a.m., two men entered the Country Lanes Bowling Alley, two miles west of Bozeman, through an air conditioning duct on the roof of the building. The men triggered a silent alarm to which the Gallatin County Sheriff's Department responded. Anthony May, defendant's partner, was apprehended in the building at that time. The safe, a cash register, a cigarette machine, a pool table, and poker machines had been looted. Several buckets of quarters had been set aside and burglary tools were found in the building.

At approximately 3:30 p.m. that same day, the sheriff's department was again called to the Country Lanes to investigate a report of a man, later identified as the defendant, hiding above a false ceiling in the building. Police officers surrounded the building. The defendant, who attempted to flee, was then arrested in a nearby field. He

was placed in a patrol car and brought back to Country Lanes where he was identified by the manager as the person who had been spotted in the ceiling.

At that point, the arresting officer asked defendant what the name of his partner was in the Country Lanes burglary, to which defendant replied, "Didn't he tell you?" He further stated to the officer that if his partner did not give the police his name, the defendant was not going to either.

Defendant was then transported to the Gallatin County Sheriff's Department where he telephoned his parole officer. He told his parole officer, "I really screwed up." He also told the parole officer of his conversation with the detective.

On March 15, 1988, an information was filed in the District Court charging defendant with burglary in violation of § 45-6-204, MCA. Defendant pled not guilty during his March 17, 1988, arraignment. On April 7, 1988, a hearing was held to consider defendant's motion to suppress the statements he made to the arresting officer. The motion was denied and a jury trial commenced on June 6, 1988. Defendant was found guilty of the charge and, on June 27, 1988, was sentenced to the Montana State Prison for a term of 15 years with 5 years suspended and credit for time served.

The first issue raised on appeal is whether the District Court erred in denying defendant's motion to suppress statements made to an arresting officer.

The arresting officer, after taking defendant in custody, asked defendant what the name of his partner was in the Country Lanes burglary. The defendant replied, "Didn't he tell you?" The officer explained that he thought defendant's partner had given him a false name to which defendant replied that if his partner had not given the

officer his name that defendant would not either. Defendant contends that because he was never advised of his rights prior to the questioning, as required under Arizona v. Miranda (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the statements should be suppressed. After a hearing on the matter, the motion to suppress was denied.

We held in In Re Matter of J.W.K. (Mont. 1986), 724 P.2d 164, 167, 43 St.Rep. 1483, 1486, that the standard to be applied in a motion to suppress is whether the District Court predicated its decision on substantial credible evidence. The record reflects that defendant did not recall being advised of his rights after being taken into custody. In fact, at the suppression hearing defendant testified that he believed he had been advised of his rights prior to questioning but that he was confused. Moreover, the arresting officer testified that he did indeed advise defendant of his rights before defendant was questioned.

Further, the District Court in a suppression hearing must look at the totality of circumstances surrounding the statements. J.W.K., 724 P.2d at 167. The circumstances may include the experience, conduct, and capacity to understand warnings. See State v. Blakney (1982), 197 Mont. 131, 138, 641 P.2d 1045, 1049. Here, the only unusual circumstance alleged by defendant was his language difficulty. Nothing in the record, however, reflects an inadequate ability of defendant to communicate or understand the English language. In fact, during the suppression hearing, defendant was asked to convey his understanding of his rights and replied, "The right to an attorney, right to remain silent, the right to have an attorney present during any questioning, I guess. That's about it." The District Court properly denied defendant's motion to suppress in view of the circumstances

and based on the testimony of the arresting officer and the defendant.

The second issue raised on appeal is whether the District Court erred in admitting testimony of defendant's parole officer during a jury trial.

Under § 2-2-102(6), MCA, a public officer is defined as any state officer. State officers are defined under § 2-2-102(8), MCA, as all elected officers and directors of the executive branch of state government. Although the Parole and Probation Division comes under the executive branch of government, a parole officer is neither an elected officer nor director. Therefore, a parole officer is not a state officer as defined above and thus, no privilege under § 26-1-810, MCA, extends to communications made to parole officers.

Defendant argues that his parole officer's testimony was unduly prejudicial since it showed that defendant had been convicted of a crime. Although the issue is one of first impression in Montana, Washington allowed a parole officer to testify at a parolee's trial. In State v. Terrovona (1986), 105 Wash.2d 632, 716 P.2d 295, a probation officer was permitted to testify in a murder trial since the testimony tended to establish a motive for murder. The Court found that because the probative value of the probation officer's testimony outweighed the prejudicial effect, the trial court did not abuse its discretion in allowing the testimony. The Court found the testimony relevant. See also State v. Chavez (1988), 111 Wash.2d 548, 761 P.2d 607 and; State v. Brown (1987), 47 Wash.App. 565, 736 P.2d 693. We so adopt this rationale where such testimony is relevant.

Rule 401 M.R.Evid., provides in part:

Relevant evidence means evidence having any tendency to make the existence of any fact that is

of consequence to the determination of the action more probable or less probable than it would be without the evidence.

In the present case, the defendant's parole officer testified that defendant stated, "I really screwed up," and that he had not revealed the name of his partner to the police. The defendant voluntarily made the statements after he had been arrested and advised of his rights as discussed earlier. Defendant initiated the conversation when he telephoned his parole officer to inform the parole officer of his arrest. Although defendant was required to inform his parole officer of arrest, the statements he made during the telephone conversation were not a result of an interrogation but were made freely and conveyed voluntarily. While some prejudicial effect is inherent in this type of testimony, we cannot say that it outweighed the probative value. The statements are relevant as an admission of guilt. The District Court properly admitted testimony of defendant's parole officer.

Affirmed.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

- 6 -