No. 84-564

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

        Plaintiff and Respondent,

   -vs-

MICHAEL PAMBRUN,

        Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and For the County of Missoula,
The Honorable Jack L. Green, Judge Presiding

COUNSEL OF RECORD:

    For Appellant:

        William Boggs, Missoula, Montana
        Wendy Holton, Helena, Montana

    For Respondent:

        Marc Racicot, Attorney General, Helena, Montana
        Robert L. Deschamps III, County Attorney, Missoula
        Montana

Submitted: October 20, 1989
Decided: November 28, 1989

Filed:

_____
/Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

A jury empaneled in the District Court of the Fourth Judicial District, Missoula County, found Michael Pambrun, defendant, guilty under § 45-5-401, MCA, of the offense of robbery. The District Court sentenced defendant to the Montana State Prison for a term of 40 years with credit for time served. Defendant was designated a dangerous offender for the purpose of parole eligibility and a persistent felony offender. Defendant appeals. We affirm.

The following issues are raised on appeal:

1. Whether the District Court erred in denying defendant's motion to suppress testimony of his parole officer concerning statements defendant made to his parole officer while he was incarcerated.

2. Whether sufficient evidence supported defendant's robbery conviction.

3. Whether the District Court's delay in answering a written question from the jury during deliberations concerning the possibility of a hung jury prejudiced defendant's right to a fair trial and, thus, constituted error.

On November 16, 1983, Eugene Medsker got into a game of stud poker, in which defendant was one of the participants, at the Oxford Bar and Cafe in Missoula, Montana. The game lasted from approximately 6:00 p.m. to approximately 9:00 p.m. Medsker bought $30.00 in chips and proceeded to collect more in winnings. Defendant bought chips in $20.00 increments throughout the evening but, as lady luck was not in his favor, he lost them all.

When the game broke up, Medsker cashed in his chips for $100.50 at the cashier window. As he was receiving his money, he noticed defendant standing a few feet away. He then put the cash in his wallet which, when added to the money already in his wallet, totaled approximately $141.00. He then went to the restroom. While in the restroom, he neither saw anyone nor heard anyone enter.

Medsker turned around and was twice struck in the face and knocked to the floor. The only recollection he had of his assailant before he lost consciousness was that the assailant was wearing blue jeans.

Shortly after 9:00 p.m., Ida Mae Dagen, a card dealer at the Oxford, observed defendant coming from the back area of the bar where the restrooms were located. He proceeded to the end of the bar where he wiped his hands on a bar rag, fixed the knot on the sweater that was draped over his shoulder, picked up two cans that were sitting on the bar, moved down the bar where he spoke with the bartender, set the cans down, and walked out the front door. Dagen did not observe anything unique or unusual about the defendant at that time except that the bar rag he wiped his hands on was dirty.

Shortly thereafter, Medsker regained consciousness and obtained assistance from those in the Oxford. Medsker had lacerations and bruises on his face, neck, and ribs and his nose was broken. His wallet containing $141.00 was missing.

At approximately 9:15 p.m., Officer Robert Charles of the Missoula Police Department arrived at the Oxford to investigate the incident. The officer interviewed Medsker, Oxford employees, and Oxford patrons. From the interviews, he suspected defendant and began a search of downtown bars for him. Officer Charles, who knew defendant liked to play

poker, located defendant at the Trails West Bar where defendant was once again engaged in a losing poker game.

The officer observed that defendant's shirt was spotted with blood, the knuckles on his right hand were skinned and bloody and he was wearing blue jeans. Defendant voluntarily accompanied the officer to the police station, where he was arrested and read his Miranda warning. At the time of his arrest, defendant had $70.80 on his person.

The next day, defendant made his initial appearance and was again advised of his rights. At that time, he requested appointed counsel.

After his initial appearance, defendant telephoned his parole officer and requested that his parole officer visit him in jail. The parole officer did visit defendant in jail, where defendant relayed the events of the previous evening to him including the fact that defendant knew an old man he had been playing poker with had been assaulted at the Oxford. The parole officer reported defendant's statements to the police.

On December 20, 1983, defendant was charged by information with the offense of robbery in violation of § 45-5-401, MCA. On February 24, 1984, defendant filed a motion to suppress statements made to his parole officer during his incarceration. A hearing on the motion was conducted on February 29, 1984, and the motion was subsequently denied.

On March 8, 1984, a jury found defendant guilty of the offense of robbery. On April 30, 1984, defendant was sentenced to forty years in the Montana State Prison. He was designated a dangerous offender and a persistent felony offender.

The first issue raised on appeal is whether the District Court erred in denying defendant's motion to suppress the

testimony of his parole officer concerning statements made to him while defendant was incarcerated. Specifically, his parole officer testified that defendant told him that defendant had knowledge that an "old man he had been playing poker with had been assaulted." The parole officer also testified that defendant relayed his activities of the night in question to the parole officer and denied committing the assault.

Defendant argued that the statements should have been suppressed since his parole officer did not advise him of his rights under Arizona v. Miranda (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, prior to speaking with the defendant. He claimed that because he had asserted his right to counsel at his initial appearance and that because the parole officer was an agent of the state, that statements made to his parole officer in absence of counsel should not have been admitted at trial absent a Miranda warning. Defendant's motion to suppress statements was denied by order of the court.

The District Court specifically noted that the prosecution proved by a preponderance of the evidence that defendant's statements and admissions to his parole officer were voluntary and, as such, came under the purview of § 46-13-301(4), MCA, which requires such proof. Thus, a Miranda warning was not required. We agree.

As the court noted in its minutes and notice of ruling, it based its order on three grounds. First, defendant was given his Miranda warning twice within 24 hours preceding his conversation with his parole officer--once on November 16, 1983, at approximately 11:00 p.m., when he was arrested, and again on November 17, 1983, at approximately 3:00 p.m., when he made his initial appearance. Second, defendant initiated the contact with his parole officer when he telephoned him

- 5 -

from jail and requested a meeting. Third, the District Court noted that defendant's statements were not the result of an interrogation but were conveyed freely and voluntarily.

Further, under State v. Higareda (Mont. 1989), 777 P.2d 302, 46 St.Rep. 1146, we adopted the rationale set forth in State v. Terrovona (1986), 105 Wash.2d 632, 716 P.2d 295, which stated that a probation officer may testify where the probative value of the probation officer's testimony outweighed the prejudicial effect and where the testimony is relevant. In the present case, defendant's parole officer testified as to the series of events that led to defendants arrest as well as statements made to him by defendant. The defendant conveyed the statements to his parole officer freely and voluntarily after he had been twice advised of his Miranda rights. As we stated in Higareda, 777 P.2d at 305:

> While some prejudicial effect is inherent in this type of testimony, we cannot say that it outweighed the probative value.

Such is the case here. The statements are relevant as an admission that he had knowledge of the assault at the Oxford. The District Court did not err in admitting the parole officer's testimony concerning defendant's statements.

The next issue raised on appeal is whether sufficient evidence supported defendant's robbery conviction.

Defendant argues that the evidence was insufficient to sustain the conviction as the evidence was based on conjecture, suspicion and possibility. We disagree.

In State v. Hammer (Mont. 1988), 759 P.2d 979, 986, 45 St.Rep. 1326, 1333, we stated that the standard of review in such a case is:

> [W]hether the evidence, when viewed in a light most favorable to the State, is sufficient for a rational trier of fact to have found the essential

elements of the crime beyond a reasonable doubt. (Citation omitted.)

Here, evidence was presented in the form of testimony and exhibits. Testimony included witnesses who saw that defendant was a participant in a poker game at the Oxford in which Medsker was also a player; that defendant gambled and drank for three hours until he went broke; that Medsker cashed out $100.50 worth of chips (which totaled approximately $141.00 when added to the money in his wallet); that Medsker went to the restroom where he was struck in the face, knocked to the floor, and robbed of his wallet by an unknown assailant wearing blue jeans; that defendant was seen in the restroom area about the same time Medsker was robbed; that defendant then returned to the bar, wiped off his hands and exited the front door; and that defendant was wearing blue jeans.

Officer Robert Charles testified that he interviewed the patrons and employees of the bar and, based upon their statements, suspected defendant as the perpetrator. Officer Charles, who knew that defendant liked to play poker, found him playing poker at the Trails West Bar where defendant had $70.80 in cash and chips and had just lost about $60.00. He testified that when he found defendant, his knuckles on his right hand were skinned and bloody and that he noticed several spots of blood on defendant's shirt.

Several pieces of physical evidence were introduced including the bloodstained clothing of both the defendant and Medsker. Human blood stains were found on defendant's jeans and shirt. However, the bloodstains on his jeans were too small for analysis and the bloodstains on his shirt neither matched the defendant's nor Medsker's blood type. Human bloodstains were also found on the bar towel that defendant used to wipe his hands before he left the bar. The

bloodstains were similar to the type found on defendant's shirt. It was stipulated that bloodstains found on Medsker's shirt were his.

In State v. Armstrong (1980), 189 Mont. 407, 616 P.2d 341, we upheld a conviction based on similar facts and circumstances. In that case, the homicide victim was robbed after cashing in $400.00 in chips he won in a poker game in which the defendant participated. The defendant cashed in $30.00 in chips. Shortly thereafter, when defendant was arrested, he had $319.02 in cash on his person and it was established he had spent $100 earlier that day. Bloodstains were found on several items belonging to defendant (the opinion did not state that the bloodstains matched any particular person's blood type). Also, a bootprint similar in size and configuration to defendant's boot was found in the area of the body.

In the present case, as in Armstrong, evidence presented was circumstantial in nature. In Armstrong, 616 P.2d at 346, we stated:

> [C]ircumstantial evidence is not always inferior in quality. The determination as to the sufficiency of circumstantial evidence to make a case for the jury and to sustain a conviction is one to be made upon all the facts and circumstances which are to be taken into consideration collectively. State v. DeTonancour (1941), 112 Mont. 94, 98, 112 P.2d 1065, 1067.

Circumstantial evidence is sufficient to sustain a conviction where it is of such "quality and quantity as to legally justify a jury in determining guilt beyond a reasonable doubt . . ." State v. Weaver (1981), 195 Mont. 481, 495, 637 P.2d 23, 31. The evidence presented in this case, although circumstantial in nature, was sufficient to sustain a verdict of guilty.

The last issue raised on appeal is whether the District Court's delay in answering a written question from the jury during deliberations concerning the possibility of a hung jury prejudiced defendant's right to a fair trial and, thus, constituted error.

Here, the jury retired for deliberations at 11:52 a.m. At 5:32 p.m., a note from the jury was delivered to the court by the bailiff asking if a hung jury was possible in the case. As evidenced by the minutes and note of ruling, all counsel were immediately summoned by the court and the sheriff brought the defendant into chambers at approximately 6:20 p.m.

The following note was prepared by the court and approved by the defendant and all counsel:

> A hung jury is possible in any case, but you would have to deliberate much longer before we could determine that there is a hung jury in this case. A hung jury is possible only if there is no possibility of reaching a unanimous verdict.

The minutes indicate that the note was taken to the jury by the bailiff but not delivered because the jury informed the bailiff that it had reached a verdict. The jury returned to court at 6:33 p.m. where it announced a verdict of guilty for the charge of robbery.

Defendant contends that the delay in the court's response, in effect, coerced a guilty verdict and prejudiced the defendant's right to a fair trail. Defendant argues that because the jury did not receive a prompt answer to its written query that it "must have supposed . . . that its question would be ignored." Defendant's contentions are speculative to say the least.

Section 46-16-503(2), MCA, provides:

> After the jury has retired for deliberation, if there is any disagreement among the jurors as to

the testimony or if the jurors desire to be informed on any point of law arising in the cause, they must require the officer to conduct them into court. When the jurors are brought into court, the information requested may be given in the discretion of the court. If such information is given, it must be given in the presence of the county attorney and the defendant and his counsel.

While the jury was not brought into court, the note drafted was prepared by the court and approved by defendant and all counsel. Defendant did not object to the manner in which the information was to be relayed nor did defendant request further inquiry concerning the time it took to draft and convey the note. The jury had already reached a verdict by the time a reply was drafted. There was no error.

Affirmed.

_William E. Hunt_
Justice

We Concur:

_John Conway Harrison_

_John C. Sheehy_

_L. C. Gulbrandson_

_Fred J. Weber_
Justices