[No. 53997–9. En Banc. October 31, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES ARTIS BROWN, *Petitioner.*

522

*Lenell Nussbaum* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Cynthia S.C. Gannett, Senior Appellate Attorney,* for respondent.

BRACHTENBACH, J.—The primary issues are whether the trial court properly admitted prior misdemeanor theft convictions pursuant to ER 404(b), and whether the trial court

properly ruled that the same convictions and a prior felony theft conviction were admissible for impeachment purposes pursuant to ER 609.

Our decision in this case changes this state's law relating to ER 609(a) in a number of respects; each change has been weighed carefully. We are mindful of principles of stare decisis, and we have not lightly altered prior decisional law. Yet this case has, by its factual status and the legal issues to be resolved, demonstrated the need to comprehensively reevaluate the law respecting admissibility of prior conviction evidence. We have engaged in such reevaluation, and find it essential to overrule some of this court's decisions, in whole or in part.

Defendant Brown was charged with two counts of second degree theft. Both involved theft by deception of cash from victims who were approached by a man who offered to sell salvaged televisions and video equipment. In each case the victim drove the man to a certain location in Seattle, gave him cash to purchase merchandise, and then waited in vain for him to return after he left with the money.

Prior to trial, defendant moved to preclude the State from presenting evidence of three prior theft convictions. The State sought to present evidence of two prior misdemeanor convictions under ER 404(b) to show a common plan or scheme of thefts by deception and prove Brown's identity based upon use of the same modus operandi in the charged crimes as used in the prior misdemeanor thefts. The State also wanted to use the two misdemeanor convictions plus a prior felony theft conviction as impeachment evidence under ER 609. The trial court ruled that the prior misdemeanor convictions could be used by the State under both ER 404(b) and ER 609, and that the prior felony conviction could be used by the State under ER 609.

At trial the victims described the thefts. The first count involved theft by deception of $600 from a restaurant owner who testified that on September 14, 1984, he met with Brown outside the restaurant and agreed to purchase

salvaged televisions and video equipment from him at substantially reduced prices. He further testified that Brown left his car at the restaurant and then left with the restaurant owner's son–in–law. The son–in–law testified that Brown directed him to a certain location in Seattle, took the cash, left, and did not return. The restaurant owner testified that 2 or 3 days later Brown returned for the car, which the restaurant owner refused to release unless the money was returned. Brown left. The theft was reported to the police. Neither the restaurant owner nor his son–in–law identified Brown from a police photo montage. However, both identified him in court as the thief.

The second count involved theft by deception of $400 on December 17, 1984, from a couple who were renovating an apartment building. The wife testified that Brown approached her in the apartment building and offered to sell her salvaged televisions and video equipment at greatly reduced prices. The couple agreed to buy two TV's and one VCR. The wife left with Brown, drove to a cash machine about 6 p.m. to obtain the $400 agreed upon, and then drove to a Seattle location specified by Brown. She testified that she gave the cash to Brown, he left, and she waited for over an hour for him to return. Thereafter, Brown flagged her down as she started to drive off and directed her to drive to other locations in Seattle. He again left, and did not return.

Two days later he called the wife, claimed he was "spaced out" before, and told her he had the merchandise. On December 30, 1984, Brown again approached the couple at the apartment building; this time the husband went with Brown to get the merchandise. He testified that Brown directed him to several locations in Seattle, demanded an additional $40, and left and did not return. Both the husband and wife presented testimony that they had reported the theft to the police after the wife's trip with Brown and that the husband went with Brown on the second trip to try to gather evidence or discover a method to lead to Brown's apprehension.

Both the wife and husband independently described the thief to the police as having a large scar on his neck (Brown has such a scar), and each independently identified Brown from a police photo montage. Both identified Brown in court as the thief.

The State called the victims of Brown's two prior misdemeanor thefts, who described the circumstances of those thefts. Both victims testified, as to separate incidents, that Brown approached them and offered to sell them salvaged televisions and video equipment for cash, that they drove Brown to a location in Seattle he specified, that Brown left with the cash and did not return with the merchandise, and that Brown later approached them again. Each victim identified Brown as the thief.

Brown defended the first count by trying to establish that someone else was the thief, that at the time of the theft Brown was suffering from a boil on his foot and had a noticeable limp, and that he wore only one shoe when he was driven to the restaurant to get the car. Neither the restaurant owner nor his son–in–law described the thief as having a limp or missing a shoe. As to the second count, Brown presented an alibi defense. A man for whom he worked shifting carpet rolls testified that Brown worked for him on December 17 from 1 p.m. until 7 p.m. He recalled the date, he said, because he and his employees discussed Christmas and Brown talked about getting a Christmas tree. This employer did not keep records of the times Brown worked for him, nor could he recall specifically any other time that Brown worked for him. A longtime friend of Brown and his family testified that on December 17 she was making candy and that about 7:30 p.m. Brown came by with a Christmas tree for her. She said he stayed about 2 hours. She also said the carpet place and a tree lot were within walking distance of her home in Renton.

Brown did not testify, but after the State and the defense presented their cases in chief, his counsel made an offer of proof as to what Brown's testimony would have been had the trial court granted his motions in limine.

Essentially, Brown would have denied the thefts and corroborated his witnesses' testimony.

The jury found Brown not guilty as to count 1, but guilty as to count 2, the theft of $400. The Court of Appeals affirmed Brown's conviction, *State v. Brown,* 47 Wn. App. 565, 736 P.2d 693 (1987), holding, among other things, that the trial court erred in ruling that the prior felony conviction was admissible. The Court of Appeals further held, however, that the error was harmless under a constitutional harmless error standard. We affirm, but employ different reasoning than did the Court of Appeals.

Brown maintains that the trial court erred by admitting the two prior misdemeanor theft convictions under ER 404(b). He argues that the evidence was not relevant nor was it necessary to prove a necessary element of the crime charged. He reasons that the prior thefts were merely similar factually to the charged crimes, and were not signature crimes sufficient to establish identity.

 While not admissible to prove a witness' character or to show that he or she acted in conformity with that character, evidence of other crimes, wrongs, or acts may be admissible for other purposes, for example, to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. ER 404(b). The trial court must identify the purpose for which the evidence is sought to be introduced, and determine whether the evidence is relevant to prove an essential element of the crime charged. *State v. Smith,* 106 Wn.2d 772, 776, 725 P.2d 951 (1986); *State v. Saltarelli,* 98 Wn.2d 358, 655 P.2d 697 (1982); ER 402. The relevancy determination requires that the purpose for which the evidence is sought to be introduced is of consequence to the outcome of the action and that the evidence tends to make the existence of the identified fact more probable. *Smith,* at 776; *Saltarelli,* at 362–63. If the court finds the information relevant, it must then weigh on the record the probative value of the evidence against its prejudicial effect. *State v. Jackson,* 102 Wn.2d 689, 694, 689 P.2d 76 (1984).

Here, the purpose for which the State sought to introduce the evidence was to establish the identity of the thief. In this case, the identity of the thief was of consequence to the outcome of the action in light of Brown's proffered defense to count 1 that another man was the thief and his alibi defense to count 2.

As to the requirement that the evidence tend to make the existence of the identified fact more probable, we have said that where a prior crime is sought to be introduced for the purpose of establishing identity, the method employed in the charged crime and the other crime "*must be so unique* that mere proof that an accused committed one of them creates *high probability* that he also committed the act charged." *Smith,* at 777 (quoting *State v. Laureano,* 101 Wn.2d 745, 764, 682 P.2d 889 (1984)). Here, in each of the prior misdemeanor thefts and the charged crimes the thief approached the victim with an offer of salvaged televisions or video equipment at substantial savings, directed the victim to drive to a certain part of Seattle, took cash from the victim (ostensibly to purchase the merchandise), left the victim waiting, did not return to the victim at that location, and returned to or contacted the victim a short time later. We conclude that these similarities satisfy the requirement that the method employed in the charged crimes and the prior crimes be so distinctive that proof that Brown committed the prior crimes created a high probability that he committed the charged crimes.

The trial court orally instructed the jury just before it heard testimony from the victims of the prior misdemeanor thefts that the evidence was not to be considered by the jury for the purpose of proof that the defendant was a person of bad character or that he was a person with a predisposition to commit the crimes for which he was on trial; the court instructed that the evidence could be considered only for the limited purpose of determining whether it tends to prove a common plan or scheme as an essential element of the crime charged. Report of Proceedings, at 227. In jury

instruction 15 the court similarly instructed the jury, adding, however, that the jury could consider the evidence for the limited purpose of determining whether the evidence tended "to prove a common plan or scheme, *lack of accident or mistake* [as] an essential element of the crime charged." (Italics ours.) Clerk's Papers, at 54. The record is unclear, but the language adding lack of accident or mistake may have arisen because the prosecutor argued in response to defendant's motion for severance of the two counts that it was his understanding that the defense would be raising an alibi defense to both counts and would be arguing that it was not him, that there must be some mistake; the prosecutor argued the State should be allowed to show that there was no mistake, no accident, that the defendant used the same type of swindle each time. When the trial court thereafter ruled that the prior misdemeanors were admissible under ER 404(b), the court reasoned in part that the testimony would be in support of the argument against the absence of accident or mistake "that comparable type offenses would involve victims other than those involved in the immediate two offenses charged." Report of Proceedings, at 76. There is no indication who drafted the written jury instruction.

We believe ER 404(b) contemplates admission of prior convictions for the purpose of showing lack of accident or mistake in cases where the prior convictions tend to disprove a defendant's claim that the conduct underlying the charged crime occurred as the result of accident or mistake. There was no claim here that Brown deceived victims into giving him cash to purchase salvaged TV's or video equipment as the result of an accident or mistake. Jury instruction 15 was erroneous insofar as it suggested to the jury that it could consider the prior misdemeanor convictions for the purpose of lack of accident or mistake. Nonetheless, Brown did not except to instruction 15 nor has he raised as an issue this aspect of admissibility under ER 404(b). In fact, Brown states in his brief that "the absence of mistake ruling is mooted in favor of the common scheme

or plan ruling [as] shown by the court's later cautionary instruction [at] RP 227." Brief of Appellant, at 32. In his petition for review it is clear that Brown's argument is that the prior crimes were not signature crimes sufficient to establish identity. Although the instruction given was incorrect, Brown has not challenged it, and we decline to decide whether the instruction would otherwise be reversible error. We conclude that the trial court did not abuse its discretion by admitting the prior misdemeanor theft convictions pursuant to ER 404(b).

 Brown appears to concede that if the prior misdemeanor convictions were properly admitted under ER 404(b), then use of these crimes was proper for impeachment purposes under ER 609(a). Petition for Review, at 13. We said in *Laureano,* at 766, that "when a prior conviction has been admitted as substantive evidence under ER 404(b), that same conviction is admissible as a matter of course for impeachment purposes under ER 609(a)." Upon reflection, we conclude that this statement is incorrect. We have said that if evidence is admitted under ER 404(b), the trial court should explain to the jury the purpose for which the evidence is admitted, and should give a cautionary instruction that the evidence is to be considered for no other purpose. *Saltarelli,* at 362 (citing *State v. Goebel,* 36 Wn.2d 367, 378–79, 218 P.2d 300 (1950)); *see* WPIC 5.30. Similarly, where evidence of prior crimes is admitted under ER 609(a) for the purpose of impeaching a witness' credibility, an instruction should be given that the conviction is admissible only on the issue of the witness' credibility, and, where the defendant is the witness impeached, may not be considered on the issue of guilt. *See* WPIC 4.64; WPIC 5.05; WPIC 5.06; *cf. State v. Passafero,* 79 Wn.2d 495, 498, 487 P.2d 774 (1971) (same issue; decided before adoption of ER 609); *State v. Summers,* 73 Wn.2d 244, 246–47, 437 P.2d 907 (1968) (same). Due to the potentially prejudicial nature of prior conviction evidence, these limiting instructions are of critical importance. Therefore, where evidence

of a defendant's prior conviction is admitted for a substantive purpose under ER 404(b) and the evidence is also ruled admissible for impeachment purposes, the jury should be given limiting instructions as to each purpose for which it may consider the evidence.

From this premise, the specific requirements of ER 609, and our cases interpreting ER 609, it follows that not all convictions admissible under ER 404(b) are also automatically admissible under ER 609. Former ER 609(a) provides:[1]

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross examination but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

Where a prior conviction was not punishable by death or imprisonment in excess of 1 year, and was not a crime involving dishonesty or false statement, it is not admissible under ER 609 regardless of its admissibility under ER 404(b). The State is therefore not always entitled to an instruction that the conviction evidence may be considered by the jury for the purpose of weighing the defendant's credibility merely because the evidence is admissible under ER 404(b). "Simply because a defendant has committed a crime in the past does not mean the defendant will lie when

_____

[1]The rule was amended effective September 1, 1988, to provide:

**(a) General Rule.** For the purpose of attacking the credibility of a witness in a criminal or civil case, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs the prejudice to the party against whom the evidence is offered, or (2) involved dishonesty or false statement, regardless of the punishment.

Order dated June 2, 1988. The amendments do not affect the impact of our decision here.

testifying." *State v. Jones,* 101 Wn.2d 113, 119, 677 P.2d 131 (1984). A defendant's credibility, key to the believability of his testimony, is quite a different matter from the purposes for which evidence is admitted under ER 404(b).

Where a jury is instructed that the prior crime may be considered on the question of the defendant's credibility as well as on the issue of identity, the reasonable assumption is that the jury will place even greater weight on that prior conviction than it would if the jury were instructed to consider the evidence only for identity purposes. Therefore, where the prior crime does not meet ER 609's requirements independently of admissibility under ER 404(b), the defendant could be exposed to particularly prejudicial evidence to which the jury may ascribe undue weight under a rule that any crime admissible under ER 404(b) is automatically admissible under ER 609.

Of course, ER 609(a)(1) requires the trial judge to balance probative evidence against prejudicial effect before admitting crimes punishable by death or imprisonment in excess of 1 year which do not involve dishonesty or false statement, and ER 404(b) also requires the trial court to balance probative value against prejudicial effect. On the one hand, because the trial court has already engaged in this balancing for ER 404(b) purposes and the evidence is admitted substantively in the State's case in chief, it seems little additional prejudice to the defendant would result from admitting the evidence for impeachment purposes as well. *See State v. Burgess,* 43 Wn. App. 253, 266–67, 716 P.2d 948, *review denied,* 106 Wn.2d 1004 (1986). Moreover, a major factor to be considered in the balancing procedure under ER 609(a)(1) is a comparison of the importance of the jury hearing the defendant's account of events with the importance that it know of his prior convictions. *State v. Alexis,* 95 Wn.2d 15, 19, 621 P.2d 1269 (1980). A defendant faced with impeachment evidence of convictions may elect not to testify; this is one basis upon which ER 609 has been criticized. *See State v. Burton,* 101 Wn.2d 1, 20–21, 676 P.2d 975 (1984) (Brachtenbach, J., dissenting). Where the

evidence has already been admitted for ER 404(b) purposes, however, there is little additional effect on the defendant's decision to testify which would result from the evidence being admitted for impeachment purposes.

On the other hand, ER 609 applies by its terms only to convictions admissible "[f]or the purpose of attacking the credibility of a witness". Unlike the balancing procedure for evidence offered for a purpose under ER 404(b), the balancing process for ER 609 purposes must be made with this principle in mind.

Therefore, we conclude that once a prior conviction has been ruled admissible under ER 404(b), the trial court should consider this fact when it engages in the balancing procedure required under ER 609(a)(1). As part of the court's comparison of the importance that the jury hear the defendant's account of events with the importance that the jury know of the prior conviction, *Alexis,* at 19; *Jones,* at 121, the trial court should consider the fact that the jury has already learned of the prior conviction, its admissibility for impeachment purposes is unlikely to affect the defendant's decision to take the stand, and therefore there may be little additional prejudice resulting from ruling the prior conviction admissible for impeachment purposes under ER 609(a)(1). *See Burgess,* at 266–67.

Where the prior conviction is sought to be admitted under ER 609(a)(2), however, the trial court is obliged to determine its admissibility as a crime involving dishonesty or false statement independently of its decision to admit the conviction evidence under ER 404(b).

We turn to the issue of admissibility under ER 609(a) of the prior theft convictions. As set forth above, ER 609(a)(1) allows for admitting convictions punishable by death or imprisonment in excess of 1 year if the trial court determines that probative value outweighs prejudicial effect. ER 609(a)(2) allows for admitting for impeachment purposes convictions which involved dishonesty or false statement, regardless of the punishment. Therefore, if a conviction involved dishonesty or false statement it is covered by ER

609(a)(2) even if it was punishable by death or imprisonment in excess of 1 year. ER 609(a)(2) differs significantly from ER 609(a)(1) because, if the conviction offered for impeachment purposes is within the scope of ER 609(a)(2), it is automatically admissible for impeachment purposes; the trial court does not engage in a balancing of probative value against prejudicial effect. *State v. Jones, supra* at 117. By contrast, we have consistently refused to recognize any per se admissibility rule for impeachment purposes under ER 609(a)(1). *See, e.g., State v. Jones, supra* at 119; *State v. Alexis, supra.* This refusal is simply another way of saying that the balancing procedure required under the rule must be a meaningful one directly related to the particular circumstances of the case.

The initial question relating to the ER 609(a) ruling in this case is whether Brown has properly preserved alleged error by the trial court in ruling the prior convictions admissible. In *State v. Pam,* 98 Wn.2d 748, 763, 659 P.2d 454 (1983) (Utter, J., concurring in the result), a majority of this court held that a defendant must state that he or she would testify if the prior convictions were excluded and must make an offer of proof outlining what his or her testimony would be. We reiterated this requirement in *State v. Koloske,* 100 Wn.2d 889, 897, 676 P.2d 456 (1984), and listed a number of objectives which requiring an offer of proof would tend to promote. First, a trial court would find the offer of proof necessary to the court's evaluation of the significance of the defendant's testimony to a case before a proper ruling on admissibility could be made. *Koloske,* at 897. Of course, this objective necessarily relates only to a question of admissibility under ER 609(a)(1). As we have explained, prior convictions for crimes involving dishonesty or false statement are automatically admissible under ER 609(a)(2) and the trial court does not engage in balancing probative value against prejudicial effect in ruling on admissibility. It follows that the nature of the defendant's proposed testimony is irrelevant to the determination to admit under ER 609(a)(2).

The second objective an offer of proof tends to meet, we noted, is to limit use by a defendant of an ER 609(a) ruling as one more ground for appeal in case of conviction even where the defendant has no intention of testifying. *Koloske,* at 897. Next, requiring the defendant to submit the anticipated testimony allows the trial judge to consider the possibility that the defendant will portray himself or herself as an innocent among thieves should the trial court rule the prior conviction evidence inadmissible. *Koloske,* at 897. Finally, where the defendant elects not to testify, the offer of proof becomes essential to appellate review. *Koloske,* at 897.

Then, in *State v. LeFever,* 102 Wn.2d 777, 786, 690 P.2d 574 (1984), we held that the offer of proof must be made, if the defendant elects not to testify, at the time the trial court makes its ER 609 ruling. We reasoned that the court can then properly evaluate the importance of the defendant's testimony and properly balance probative value of admitting the prior conviction evidence against its prejudicial effect. *LeFever,* at 786. Moreover, requiring the offer of proof to be made at the time the trial court makes its ER 609 ruling, we said, enables the trial court to comply with the requirement we set forth in *State v. Jones,* 101 Wn.2d 113, 122, 677 P.2d 131 (1984), that the court state for the record the factors favoring admission or exclusion of the evidence. *LeFever,* at 786. Again, however, the requirement in *LeFever* that the offer of proof be made when the trial court makes its ER 609 ruling is supported by the reasons given in *LeFever* only in the case of a prior felony conviction not involving dishonesty or false statement. Where the relevant prior conviction is for a crime involving dishonesty or false statement, the court does not engage in the balancing process and the nature of the defendant's testimony is irrelevant. However, the offer of proof still serves to assure proper appellate review of the impact of an erroneous ruling admitting prior conviction evidence under ER 609(a)(2); the appellate court then has some basis for determining whether the error was harmless.

We address, for the first time, the United States Supreme Court decision in *Luce v. United States,* 469 U.S. 38, 83 L. Ed. 2d 443, 105 S. Ct. 460 (1984). There, during trial, the defendant moved for a ruling to preclude the government from impeaching him with a prior conviction. The defendant made no commitment to testify if the motion were granted, nor did he make a proffer to the court as to what his testimony might be. The District Court ruled that the prior conviction fell within the category of permissible evidence under Fed. R. Evid. 609(a), and then reasoned that the nature and scope of the defendant's testimony could affect the court's specific evidentiary rulings. The court therefore denied the in limine motion. The defendant did not testify; the jury returned guilty verdicts. The Court of Appeals, Sixth Circuit, affirmed.

The Supreme Court took the case to resolve a split in the federal courts over whether a defendant must testify in order to preserve alleged error in rulings on admissibility of prior conviction evidence. The Court held that to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify. *Luce,* at 43. The Court recited a number of reasons supporting its holding. First, the Court reasoned that "[a] reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context." *Luce,* at 41. The Court noted that this is especially true where the trial court must engage in balancing probative value of the prior conviction evidence against its prejudicial effect to the defendant under ER 609(a)(1). The precise nature of the defendant's testimony, which is needed to perform this balancing, is unknowable where the defendant does not testify. The Court said that requiring a defendant to make a proffer of testimony does not resolve the problem, as a defendant's testimony could differ from the proffer for any number of reasons. *Luce,* at 41 n.5.

Moreover, the Court reasoned, "[a]ny possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative."

*Luce,* at 41. The ruling is subject to change as the case unfolds, because the defendant's testimony may differ from that which the defendant proffered or the judge may change the in limine ruling later during trial. *Luce,* at 41–42. Further, where the defendant does not testify, the reviewing court has no way of knowing whether the government would in fact have impeached the defendant with prior conviction evidence. *Luce,* at 42. For example, if the case against the defendant is strong, other means of impeachment are available, and the prior conviction evidence is arguably inadmissible, the prosecutor may elect not to use the prior conviction to impeach. *Luce,* at 42.

Next, the Court reasoned that because a defendant's decision whether to testify seldom turns on resolution of one factor, a reviewing court cannot assume that a defendant's decision not to testify resulted from an adverse ruling. *Luce,* at 42.

Finally, the Court noted that if rulings on rule 609(a) motions in limine were reviewable on appeal, almost any error would result in the windfall of automatic reversal; "the appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying." *Luce,* at 42. The Court observed that requiring the defendant to testify to preserve alleged error in rule 609(a) rulings will enable a reviewing court to examine the record as a whole and determine the impact of any erroneous impeachment, and will tend to discourage defendant's use of motions to "plant" reversible error should the defendant be convicted. *Luce,* at 42.

We are not, of course, bound to follow the decision in *Luce,* as the federal courts are. A few courts have declined to accept the *Luce* holding. *State v. Whitehead,* 104 N.J. 353, 517 A.2d 373 (1986); *People v. Contreras,* 108 A.D.2d 627, 485 N.Y.S.2d 261 (1985); *State v. McClure,* 298 Or. 336, 692 P.2d 579 (1984); *Commonwealth v. Richardson,* 347 Pa. Super. 564, 500 A.2d 1200 (1985). At least two courts have declined to decide yet whether they will adopt the *Luce* holding. *Askew v. United States,* 540 A.2d 760

(D.C. 1988); *Commonwealth v. Cordeiro,* ___ Mass. ___, 519 N.E.2d 1328 (1988); *cf. State v. Lamb,* 321 N.C. 633, 365 S.E.2d 600 (1988) (court declines to decide whether *Luce* applies in context of rule 608(b)). The majority of the courts considering the question, however, have adopted the *Luce* holding. *State v. Means,* 363 N.W.2d 565 (S.D. 1985); *State v. Gentry,* 747 P.2d 1032 (Utah 1987); *State v. Moffett,* 729 S.W.2d 679 (Tenn. Crim. App. 1986), *appeal denied,* Feb. 9, 1987; *Jimenez v. State,* 480 So. 2d 705 (Fla. Dist. Ct. App. 1985); *State v. Harrell,* 199 Conn. 255, 506 A.2d 1041 (1986); *Richardson v. State,* 733 S.W.2d 947 (Tex. Ct. App. 1987), *vacated on other grounds,* 761 S.W.2d 19 (1988); *Benavides v. State,* 763 S.W.2d 587 (Tex. Ct. App. 1988), *petition for review filed,* Feb. 27, 1989; *State v. Glenn,* 285 S.C. 384, 330 S.E.2d 285 (1985); *People v. Brewer,* 720 P.2d 596 (Colo. Ct. App. 1985); *State v. Allie,* 147 Ariz. 320, 710 P.2d 430 (1985) (prior Arizona law was consistent with *Luce*); *People v. Collins,* 42 Cal. 3d 378, 722 P.2d 173, 228 Cal. Rptr. 899 (1986); *State v. Garza,* 109 Idaho 40, 704 P.2d 944 (Ct. App. 1985); *People v. Rush–Bey,* 152 Ill. App. 3d 17, 503 N.E.2d 1193, *appeal denied,* 511 N.E.2d 435 (1987); *People v. Redman,* 141 Ill. App. 3d 691, 490 N.E.2d 958, *appeal denied,* June 3 (1986); *People v. Finley,* 431 Mich. 506, 431 N.W.2d 19 (1988); *Reed v. Commonwealth,* ___ Va. App. ___, 366 S.E.2d 274 (1988).

A few other courts have approved the *Luce* reasoning in different contexts. *People v. Whitehead,* 116 Ill. 2d 425, 508 N.E.2d 687 (involving admissibility of statements during psychiatric examination for purposes of discrediting the defendant if he testified), *cert. denied,* 108 S. Ct. 307 (1987); *Vaupel v. State,* 708 P.2d 1248 (Wyo. 1985) (in context of rule 609(b)). The Alaska Court of Appeals appeared to favor *Luce* in *Page v. State,* 725 P.2d 1082 (Alaska Ct. App. 1986), but later held the *Luce* rule inapplicable where the record was otherwise adequate to address the trial court's ruling. *Wickham v. State,* 770 P.2d 757 (Alaska Ct. App. 1989). Finally, as the Minnesota Court of Appeals observed in *State v. Ford,* 381 N.W.2d 30, 32 n.1

(Minn. Ct. App.), *review denied,* Mar. 27 (1986) in a case decided 7 months after *Luce* was handed down the Minnesota State Supreme Court reviewed a rule 609(a) issue raised by a defendant who failed to testify and found that the trial court did not abuse its discretion in admitting prior conviction evidence for impeachment purposes. *State v. Graham,* 371 N.W.2d 204 (1985). The court did not address *Luce.*

While the majority of courts considering the question have adopted *Luce,* we do not suggest that weight of numbers is determinative as to whether we will adopt the *Luce* rule. However, our survey of state court decisions on the issue serves to show that the *Luce* rule is a widely accepted means of resolving a number of difficult concerns involving review of rule 609 rulings.

 When we consider the reasons which led to our adoption of the offer of proof requirement in *Pam* and *Koloske* and compare them to the reasoning in *Luce,* it is apparent that we have essentially already approved the reasoning in *Luce.* Thus, we share with the United States Supreme Court concerns about the trial court's ability to meaningfully balance probative value of admitting conviction evidence for impeachment purposes under ER 609(a)(1) against prejudicial effect to the defendant; assuring that the defendant does not "plant" error as another ground for appellate review; and providing a meaningful record for appellate review. Moreover, we agree that the defendant's actual testimony may differ from any offer of proof. Further, any assessment of the impact of an erroneous ruling admitting prior conviction evidence is necessarily speculative where the defendant does not testify and the evidence is not introduced by the State. These concerns weigh in favor of adopting the *Luce* rule.

We also consider whether adopting the *Luce* holding would unacceptably infringe upon the defendant's rights or be inconsistent with the goal of fair judicial treatment of criminal defendants. In our prior cases we have expressed

concern with the impact of rulings admitting prior conviction evidence for impeachment purposes upon a defendant's right to testify in his own defense. *State v. Jones, supra* at 124; U.S. Const. amend. 6; Const. art. 1, § 22 (amend. 10). The inherently prejudicial nature of such evidence may have a significant effect on the defendant's decision to testify. However, we have never found admission of prior conviction evidence under ER 609 to constitute an unconstitutional procedure even where error occurred. Instead, we have applied a constitutional harmless error standard to an erroneous ruling admitting prior conviction evidence, in light of the constitutional significance of the ruling on the defendant's right to testify and the prejudicial nature of such evidence. *See State v. Jones, supra* at 125; *State v. Harris*, 102 Wn.2d 148, 157, 685 P.2d 584 (1984).

In *Luce* the Court addressed the petitioners' argument based on cases involving Fifth Amendment challenges to state court rulings operating to dissuade defendants from testifying, and said that the Court "did not hold that a federal court's preliminary ruling on a question not reaching constitutional dimensions—such as a decision under Rule 609(a)—is reviewable on appeal." *Luce v. United States, supra* at 42–43. It is evident that the Court in *Luce* perceived no bar to its holding based upon Fifth Amendment concerns, nor, implicitly, upon Sixth Amendment concerns. We agree that there is no constitutional bar to the *Luce* rule.

Moreover, even though the *Luce* rule may affect a defendant's decision to testify in that he or she will be unable to raise on appeal alleged error in a rule 609(a) ruling unless he or she testifies, we do not believe, even assuming that this concern is the determinative one for the defendant in a particular case, that requiring the defendant to make the choice whether to testify is overly burdensome. As the United States Supreme Court has said:

> The criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments" as to which course to follow. Although a defendant may

have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.

(Citation omitted.) *McGautha v. California,* 402 U.S. 183, 213, 28 L. Ed. 2d 711, 91 S. Ct. 1454 (1971).

We do not think that requiring the defendant to take the stand in order to preserve alleged rule 609(a) error is measurably different from compelling the defendant to make the decision in the first place as to whether to testify if prior conviction evidence might be admitted; the defendant may have to choose between exercising his or her right to testify in his or her own behalf and face the possibility of being impeached, or remaining silent. While this may be a difficult choice, it is one necessarily inherent in every instance where prior conviction evidence may be admitted under Fed. R. Evid. 609(a) or ER 609(a).

We conclude that the *Luce* rule has as its underpinnings reasons which we agree justify its adoption in this state. Therefore, we hold that in order to preserve alleged error in a ruling admitting prior conviction evidence for impeachment purposes under ER 609(a), a defendant must take the stand and testify. Our holding applies to rulings under both ER 609(a)(1) and (2); in the latter case the desirability of a complete record for review to determine whether any error is harmless error favors the *Luce* rule although the trial court does not need the defendant's testimony to balance probative value of the evidence against prejudicial effect to the defendant in order to make its decision whether to admit prior conviction evidence. By our holding we necessarily overrule *Pam, Koloske,* and *LeFever* to the extent they established that by a timely offer of proof a defendant could properly preserve alleged error in trial court rulings on admissibility of prior conviction evidence for impeachment purposes.

Here, Brown did not testify. Therefore, if we apply the *Luce* rule in this case, we need not reach the propriety of

the trial court's ruling admitting Brown's prior theft convictions.

Other courts have declined to apply the *Luce* rule in cases tried before the rule was adopted. As a question of retroactive application, for example, the United States Court of Appeals, Ninth Circuit, has held that *Luce* applies prospectively only. *United States v. Givens,* 767 F.2d 574 (9th Cir.), *cert. denied,* 474 U.S. 953 (1985). In reaching this conclusion, the court applied three factors set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 30 L. Ed. 2d 296, 92 S. Ct. 349 (1971):

> (1) whether the decision establishes a new principle of law, (2) whether retroactive application will further or retard the purposes of the rule in question, and (3) whether applying the new decision will produce substantial inequitable results.

*Givens,* at 578. The Ninth Circuit reasoned that, as to the first and third factors, *Luce* established a new principle of law which, if applied retroactively, would "wreak a substantial inequity by precluding [the defendant] from challenging the admissibility of proof of his prior convictions." *Givens,* at 578. This was particularly the case because the Ninth Circuit had an established procedure prior to *Luce* requiring the defendant to do two things to preserve a rule 609(a) ruling for appeal: (1) establish on the record that he or she would in fact take the stand and testify if the ruling excluded the prior conviction evidence, and (2) outline the nature of his or her proposed testimony sufficiently so that the trial court and the reviewing court could engage in the balancing required by the rule. The defendant had complied with these requirements. The court determined that although the second *Chevron* factor (that the purpose of the *Luce* holding would be furthered by "providing the trial court with concrete testimony on which to base its ruling") favored retroactive application of the *Luce* rule, the first and third factors outweighed that factor. *Givens,* at 578.[2] A

---

[2]The court distinguished an Eleventh Circuit case remanded by the United States Supreme Court in light of *Luce, United States v. DiMatteo,* 716 F.2d 1361 (11th Cir. 1983), *vacated and remanded,* 469 U.S. 1101, 83 L. Ed. 2d 767, 105 S.

number of state courts adopting the *Luce* rule have also applied the rule prospectively only. *See, e.g., State v. Harrell,* 199 Conn. 255, 506 A.2d 1041 (1986); *People v. Collins,* 42 Cal. 3d 378, 722 P.2d 173, 228 Cal. Rptr. 899 (1986); *State v. Gentry,* 747 P.2d 1032 (Utah 1987).

The United States Court of Appeals, Third Circuit, however, has held that *Luce* applies retroactively. *United States v. Dunbar,* 767 F.2d 72 (3d Cir. 1985). The Third Circuit applied the same *Chevron* factors in reaching its decision as the Ninth Circuit applied in *Givens.* Key to the Third Circuit's decision was its conclusion that it had not precisely held previously that a defendant need not testify in order to preserve error, the federal courts had split on the question, and therefore *Luce* did not state a new principle of law nor did the defendant suffer a substantial hardship in that he had the opportunity to testify and could not have been relying on existing law. *Dunbar,* at 74–75.

In *State v. Rhoads,* 101 Wn.2d 529, 535, 681 P.2d 841 (1984), we held that our decision in *State v. Jones, supra* (that a trial court state for the record the reasons for excluding or admitting prior conviction evidence) constituted a clear break with the past which would not apply retroactively to cases tried before the decision was filed. We noted that prior to *Jones* trial courts and the Court of Appeals had justifiably relied upon our statement in *State v. Thompson,* 95 Wn.2d 888, 893, 632 P.2d 50 (1981), that the trial court need not state, on the record, any reasons for admitting or excluding prior conviction evidence. In reaching our decision, we applied the retroactivity analysis set forth by the United States Supreme Court in *United States v. Johnson,* 457 U.S. 537, 73 L. Ed. 2d 202, 102 S. Ct. 2579 (1982), which we adopted and expanded beyond Fourth Amendment cases in *State v. Pam,* 98 Wn.2d 748, 659 P.2d 454 (1983).

---

Ct. 769 (1985), on the basis that there the defendant did not rely on the law of the circuit in making his record for purposes of appeal. *Givens,* at 578.

We note that *Johnson* is no longer the law in federal courts, because the United States Supreme Court recently held, at least insofar as newly declared constitutional rules are concerned, "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky,* 479 U.S. 314, 328, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987). The Court noted in *Griffith,* however, that retroactivity analysis in civil cases continues to be governed by the standard announced in *Chevron Oil, Griffith,* at 322 n.8, which is the 3-factor analysis used by the Ninth and Third Circuits in deciding whether to apply *Luce* retroactively. Of course, *Givens* and *Dunbar* were decided before *Griffith* and therefore did not address what effect, if any, the *Griffith* holding would have in this area. *Griffith* itself involved retroactivity of a new constitutional rule of criminal procedure beneficial to the defendant, and is replete with references to treating similarly situated defendants the same and providing all defendants whose cases are not yet final with the same benefit as the "lucky individual whose case was chosen as the occasion for announcing the new principle . . ." (Citations omitted.) *Griffith,* at 327.

*Griffith* is thus unclear as to whether its holding applies in cases where a new rule works to the disadvantage of the defendant. Moreover, *Griffith* specifically involved a new constitutional rule, as had *Johnson.* At least one court has limited *Griffith*'s applicability to rules of constitutional dimension. *Diggs v. Owens,* 833 F.2d 439 (3d Cir. 1987), *cert. denied,* 99 L. Ed. 2d 488 (1988).

While we have extended federal retroactivity analysis to cases other than Fourth and Fifth Amendment cases, we decline to apply *Griffith*'s holding here. We hasten to add, however, that the issue here is not one, strictly speaking, of retroactivity, but instead involves the question whether to apply the *Luce* rule in this, the case in which we adopt that rule.

Nonetheless, we believe the analysis by the Ninth Circuit in *Givens* is persuasive. As was true in that circuit when *Luce* was handed down, the law of this state at the time of Brown's trial clearly required only that he state his intention to testify but for the ruling admitting the prior convictions and that he make a sufficient offer of proof. Having precisely established the requirements which a defendant had to satisfy to preserve this type of alleged error for appellate review, we will not change the rules after the fact to preclude the defendant from that review. We conclude that our holding, that a defendant must testify to preserve alleged errors in ER 609(a) rulings admitting prior conviction evidence, will apply prospectively from the date this opinion is filed.

We turn, then, to whether, under prior law, Brown properly preserved the ER 609(a) issues for appellate review. Brown's counsel stated Brown's intention to testify but for the ruling, and made an offer of proof, but did so only after presentation of the State's and the defense's cases in chief. The trial court's ruling was a pretrial one, however. Thus, Brown did not state his intention to testify and make his offer of proof at the time the trial court made its ruling. As we have explained, if the prior conviction evidence was admitted under ER 609(a)(1), Brown's offer of proof was not timely. *State v. LeFever,* 102 Wn.2d 777, 786, 690 P.2d 574 (1984). At the time it made its ruling, the trial court would have been unable to balance probative value of the evidence against prejudicial effect to the defendant, nor could it state for the record the reasons for admission or exclusion. If, on the other hand, the prior conviction evidence was admissible under ER 609(a)(2), then the offer of proof had to be made in time to properly preserve a record for purposes of appellate review, but not necessarily at the time the trial court made its pretrial ruling.

The record discloses some confusion as to the basis of the trial court's ruling. Although the court could not have admitted the prior misdemeanor convictions under ER

609(a)(1), the court appears to have considered the probative value of admitting all three convictions against prejudicial effect to the defendant. The court said that all three offenses involved honesty, and related this consideration to the "dominant" issue of credibility in the case. The court stated that the probative value of the conviction evidence outweighed the potential prejudice to the defendant. Nonetheless, the court did not state for the record which of the factors we previously defined for purposes of the balancing process favored admission and which favored exclusion, *see* *State v. Alexis*, 95 Wn.2d 15, 19, 621 P.2d 1269 (1980); *State v. Jones*, 101 Wn.2d 113, 121–22, 677 P.2d 131 (1984), as required for a ruling admitting prior conviction evidence under ER 609(a)(1), *Jones*, at 122.

In any event, we hold that all three theft convictions were automatically admissible as crimes involving dishonesty under ER 609(a)(2). We overrule *State v. Burton*, 101 Wn.2d 1, 676 P.2d 975 (1984) and cases following it which held that crimes of theft are not admissible pursuant to ER 609(a)(2). Our holding both establishes that, under these facts, Brown's offer of proof was sufficient to preserve the propriety of the ruling for appellate review, and at the same time resolves the propriety of the ruling.

In *Burton* we addressed for the first time the nature of crimes falling within ER 609(a)(2), and whether theft crimes were encompassed within the rule as crimes involving dishonesty. We concluded that because the language in our rule was taken verbatim from Fed. R. Evid. 609(a)(2), it was proper to look at the federal legislative history of the rule and federal case law developed since the federal rule's adoption in order to construe our rule. We also said that theft crimes "have generated a great deal of confusion and controversy because the term 'dishonesty' in its common meaning connotes a disposition to lie, cheat or defraud, arguably encompassing crimes of theft." *Burton*, at 8 (citing Note, *An Analysis of the Phrase "Dishonesty or False Statement" as Used in Rule 609*, 32 Okla. L. Rev. 427, 430 (1979)).

In interpreting ER 609(a)(2), we relied heavily on a definition of the phrase "dishonesty or false statement" as used in Fed. R. Evid. 609(a)(2) found in the Senate Judiciary Committee Report which explained the meaning of the phrase very narrowly as

> crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement or false pretense, or any other offense, in the nature of crimen falsi the commission of which involves some element of untruthfulness, deceit or falsification bearing on the accused's propensity to testify truthfully.

S. Rep. No. 1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 7051, 7061. Except for insignificant changes in language order, this is the same definition accorded the phrase by the House–Senate Conference Committee. H.R. Conf. Rep. No. 1597, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 7098, 7103. We then explained that at common law the term crimen falsi referred to infamous crimes and that crimen falsi does not include the crime of simple petit larceny. We concluded that crimes of dishonesty "include only those crimes which contain elements in the nature of *crimen falsi* and which bear *directly* on a defendant's propensity for truthfulness." *Burton,* at 7. We observed that the majority of the circuits of the United States Court of Appeals hold that theft crimes are not automatically admissible under Fed. R. Evid. 609(a)(2). We held that "misdemeanor crimes of theft in general are inadmissible under ER 609(a)(2) unless there is some element of fraud or deceit (such as unlawful issuance of bank checks, RCW 9A.56.060)." *Burton,* at 10.

Initially, our reliance on federal law in *Burton* is inconsistent with our approach later in *State v. Newton,* 109 Wn.2d 69, 743 P.2d 254 (1987). That is, as we correctly noted in *Burton,* the majority of circuits of the United States Court of Appeals have held that prior theft convictions are not automatically admissible, often relying on the House–Senate Conference Committee Report in construing

rule 609(a)(2) narrowly.[3] The majority of these circuits also hold, however, that the trial court may inquire into the underlying facts of a prior conviction in order to determine whether it was a crime involving dishonesty or false statement.[4] While in *Burton* we followed the federal interpretation of rule 609(a)(2) in construing our identically worded ER 609(a)(2), we did not similarly follow the federal view that inquiry into the underlying facts of the crime was allowable to determine whether the prior theft crime in fact involved dishonesty or false statement. Instead, in *State v. Newton, supra,* we held that in determining whether a crime involves dishonesty for purposes of ER 609(a)(2), the trial court may not inquire into the underlying facts and circumstances of the crime.

More fundamentally, our heavy reliance in *Burton* upon federal legislative history and upon federal decisional law was misguided. When we sought to resolve the "confusion and controversy" as to whether theft crimes are within ER 609(a)(2) by examining federal law, we lost sight of basic principles we generally employ in construing rules we have authored.

First, of course, is the principle that federal case law interpreting the federal rule is not binding upon this court. Simply because our rule is identical to the federal rule does

---

[3]*See, e.g., Linskey v. Hecker,* 753 F.2d 199 (1st Cir. 1985); *United States v. Hayes,* 553 F.2d 824, 827 (2d Cir.) (dicta), *cert. denied,* 434 U.S. 867 (1977); *Government of V.I. v. Toto,* 529 F.2d 278 (3d Cir. 1976); *United States v. Ashley,* 569 F.2d 975 (5th Cir.) (also, retracting language in *United States v. Carden,* 529 F.2d 443 (5th Cir.), *cert. denied,* 429 U.S. 848 (1976), suggesting that conviction for petit larceny is admissible under rule 609(a)(2)), *cert. denied,* 439 U.S. 853 (1978); *United States v. Yeo,* 739 F.2d 385 (8th Cir. 1984); *United States v. Ortega,* 561 F.2d 803 (9th Cir. 1977); *United States v. Glenn,* 667 F.2d 1269 (9th Cir. 1982); *United States v. Seamster,* 568 F.2d 188 (10th Cir. 1978); *United States v. Smith,* 551 F.2d 348 (D.C. Cir. 1976).

[4]*United States v. Grandmont,* 680 F.2d 867 (1st Cir. 1982); *United States v. Hayes, supra; Government of V.I. v. Toto, supra* (absent "special circumstances" conviction of petit larceny is not a crime of crimen falsi); *United States v. Yeo, supra; United States v. Glenn, supra; United States v. Seamster, supra; United States v. Smith, supra.*

not require us to interpret our rule in the same fashion, nor could it require us to do so. This court is the final authority insofar as interpretation of this State's rules is concerned, and we are free to interpret the rules differently than do the federal courts as long as we do not run afoul of federal constitutional prohibitions. For example, in *Orwick v. Seattle,* 103 Wn.2d 249, 692 P.2d 793 (1984), we unanimously rejected federal case law interpreting Fed. R. Civ. P. 12(b)(6) where we determined that that case law was unpersuasive and analytically unsound. Further, when we adopted ER 609(a)(2), we did not thereby adopt federal legislative history. *See* Comment, ER 609, 91 Wn.2d 1150 (1978) (this comment explains that our rule is substantially the same as the federal rule, and is more restrictive than prior Washington law, but the comment is silent as to federal legislative history and contains no indication that we committed this court to follow federal law).

Second, we have grave reservations about whether the federal courts' restrictive construction of rule 609(a)(2) to exclude per se admissibility of prior theft convictions is analytically sound. As we have noted, the federal courts place great weight on the definition accorded the phrase "dishonesty or false statement" found in federal legislative history. We think that in relying upon the congressional committee reports' definition, courts have overlooked the language of the rule itself. The rule is stated in the disjunctive, "dishonesty *or* false statement." Yet, even where the federal courts have allowed inquiry into the underlying facts of a theft crime to determine whether it involves dishonesty or false statement, they have often stated the permissible inquiry as whether the offense was committed "by fraudulent or deceitful means." *See, e.g., United States v. Smith,* 551 F.2d 348 (D.C. Cir. 1976); *United States v. Grandmont,* 680 F.2d 867 (1st Cir. 1982); *United States v. Glenn,* 667 F.2d 1269 (9th Cir. 1982). It appears that these courts focus on whether the prior conviction involved false statement, *i.e.,* some kind of misrepresentation, and that

they accord the term "dishonesty" little independent significance. Indeed, in express recognition of this fact, the Oregon Legislative Assembly deleted the term "dishonesty" when first adopting its version of rule 609. Commentary to Oregon Evidence Rule 609, *quoted in* J. Weinstein & M. Berger, *Evidence* ¶ 609[12], at 609–177 (1987).[5] This lack of focus on the term "dishonesty" by the federal courts is consistent with the emphasis those courts place on the congressional conference reports' definition of the phrase dishonesty or false statement.

Rather than concentrating on federal interpretation of the federal rule, we will examine the meaning of ER 609(a)(2) without using federal case law and federal legislative history as a starting point. In a similar vein, while we have examined the evidence rules, statutes and case law of the other states to assess their law respecting admissibility of prior conviction evidence for impeachment purposes, we are mindful of the substantial differences in the applicable rules from state to state. A few examples: Alabama allows admission of prior crimes involving moral turpitude, Ala. Code § 12–21–162 (1975, 1986 repl., Supp. 1988); Colorado allows admission of prior felonies, Colo. Rev. Stat. § 13–90–101 (1987 & Supp. 1988); North Carolina allows admission of crimes punishable by more than 60 days' confinement, N.C. Gen. Stat. ch. 8C, rule 609 (1986); Michigan's rule expressly allows admission of crimes containing an element of theft, Michigan R. Evid. 609 (West 1989); and Montana does not allow admission of prior conviction evidence for impeachment purposes, Montana R. Evid. 609 (1989).

Nonetheless, we note that a number of states with rules similar to ours have concluded that theft crimes involve dishonesty or false statement. *See, e.g., State v. Page,* 449 So. 2d 813 (Fla. 1984) (theft, robbery, and related crimes

---

[5]Oregon Rule of Evidence 609, codified at Or. Rev. Stat. § 40.355 (1987), was amended by the "Crime Victims' Bill of Rights," proposed by initiative petition and enacted by the voters on November 4, 1986, effective December 4, 1986. The rule now includes as admissible for impeachment purposes crimes which "involved false statement or dishonesty."

are per se admissible as crimes involving dishonesty); *State v. Day,* 94 N.M. 753, 617 P.2d 142 (robbery involves dishonesty), *cert. denied,* 449 U.S. 860 (1980); *State v. Melendrez,* 91 N.M. 259, 572 P.2d 1267 (Ct. App. 1977) (shoplifting involves dishonesty or false statement); *State v. Tolliver,* 33 Ohio App. 3d 110, 514 N.E.2d 922 (1986) (theft offense involves dishonesty or false statement); *Seegars v. State,* 655 P.2d 563 (Okla. Crim. App. 1982) (robbery involves dishonesty or false statement); *Kennedy v. State,* 640 P.2d 971 (Okla. Crim. App. 1982) (petit larceny involves dishonesty or false statement); *State v. Gallant,* 307 Or. 152, 764 P.2d 920 (1988) (second degree theft by shoplifting is a crime involving dishonesty); *Commonwealth v. Randall,* 515 Pa. 410, 528 A.2d 1326 (1987) (court judicially adopts rule 609(a)(2); burglary involves dishonesty or false statement); *Commonwealth v. Bells,* 373 Pa. Super. 57, 540 A.2d 297 (1988) (theft involves dishonesty); *State v. Butler,* 626 S.W.2d 6 (Tenn. 1981) (shoplifting involves dishonesty or false statement) (Tennessee adopted 609(a) and (b) in *State v. Morgan,* 541 S.W.2d 385 (Tenn. 1976)). In *Webster v. State,* 284 Ark. 206, 680 S.W.2d 906 (1984), the Arkansas Supreme Court concluded that grand larceny involves dishonesty. However, later in *Pollard v. State,* 296 Ark. 299, 756 S.W.2d 455, 456 n.2 (1988), that court declined to address admissibility of prior larceny convictions under rule 609(a)(2) on the ground that it ultimately held that the trial court correctly admitted the convictions under rule 609(a)(1). In *State v. Cintron,* 680 P.2d 33 (Utah 1984), the Utah State Supreme Court held that, under identical language to that in rule 609 in then rule 21, theft involves dishonesty. The viability of that holding was questioned by the Utah Court of Appeals which held that the new rule 609(a) requires examination of the underlying facts before a determination can be made as to whether a theft crime involves dishonesty. *State v. Wight,* 765 P.2d 12 (Utah Ct. App. 1988).

Additionally, a number of courts having rules similar to ours, except that prior convictions involving dishonesty or

false statement are not per se admissible but rather admissibility depends upon a balancing procedure, have also concluded that theft crimes involve dishonesty or false statement. *See, e.g., Lowell v. State,* 574 P.2d 1281 (Alaska 1978) (grand larceny involves dishonesty or false statement); *People v. Spates,* 77 Ill. 2d 193, 395 N.E.2d 563 (1979) (misdemeanor theft involves dishonesty or false statement); *State v. Ruan,* 419 N.W.2d 734 (Iowa Ct. App. 1987) (conspiracy to commit third degree theft involves dishonesty); *State v. Willard,* 351 N.W.2d 516 (Iowa 1984) (under statute preceding rule, but with essentially the same language albeit limited to felonies, theft is a felony involving dishonesty or false statement).

A number of courts faced with a rule the same as ours or a rule similar to ours have held, to the contrary, that theft crimes do not involve dishonesty or false statement. *See, e.g., State v. Williams,* 212 Neb. 860, 326 N.W.2d 678 (1982) (in the absence of something other than ordinary stealing, petit larceny is not crimen falsi and not a crime involving dishonesty or false statement); *State v. Eugene,* 340 N.W.2d 18 (N.D. 1983) (possession of stolen property and burglary); *State v. Darveaux,* 318 N.W.2d 44 (Minn. 1982) (misdemeanor shoplifting); *but see State v. Stanifer,* 382 N.W.2d 213 (Minn. Ct. App. 1986) (robbery is a crime involving dishonesty).

By this recitation of other states' case law we do not suggest that we rely on these decisions in interpreting our rule any more than we rely in the first instance on federal law. One thing is apparent, however. The phrase "dishonesty or false statement" is often interpreted by state courts to include theft crimes, despite the fact that the federal courts fairly consistently do not interpret the phrase as including such crimes.

In any event, we return to basics. We begin with the principle that, while as the author of the rule we are in a position to interpret the meaning sought to be conveyed by the rule, we approach our rules as though they had been

drafted by the Legislature and give the words their ordinary meaning. *Heinemann v. Whitman Cy.,* 105 Wn.2d 796, 802, 718 P.2d 789 (1986); *State ex rel. Schillberg v. Everett Dist. Justice Court,* 90 Wn.2d 794, 797, 585 P.2d 1177 (1978). The term "dishonest" implies the act or practice of telling a lie, or of cheating, deceiving, and stealing. *Webster's Third New International Dictionary* 650 (1981). Crimes of theft involve stealing, and are clearly encompassed within the term dishonest. Moreover, we agree with former Chief Justice Burger's statement when with the United States Circuit Court of Appeals that "[i]n common human experience acts of deceit, fraud, cheating, or- stealing, . . . are universally regarded as conduct which reflects adversely on a man's honesty and integrity." *Gordon v. United States,* 383 F.2d 936, 940 (D.C. Cir. 1967), *cert. denied,* 390 U.S. 1029, 20 L. Ed. 2d 287, 88 S. Ct. 1421 (1968).

We note that in *State v. Coe,* 101 Wn.2d 772, 775, 684 P.2d 668 (1984), we relied on *Burton* in concluding that shoplifting was not admissible under ER 609(a)(2), and, in so doing, we quoted *United States v. Ortega,* 561 F.2d 803, 806 (9th Cir. 1977): "An absence of respect for the property . . . is not an indicium of a propensity toward testimonial dishonesty." We believe our adoption of this view ill advised. The act of taking property is positively dishonest. It makes no sense to us, upon weighing this matter, to distinguish crimes of theft on the basis that they involve the taking of another's property. We perceive no reason to believe that a person's propensity to lie may be demonstrated by past acts of lying but not by past acts of dishonest conduct. The sole purpose of impeachment evidence is to enlighten the jury with respect to the defendant's credibility as a witness. *State v. Jones,* 101 Wn.2d at 118. This purpose is met by allowing admissibility of prior convictions evidencing dishonesty, regardless of the fact that the conduct had as its purpose the taking of another's property.

We conclude that taking another's property by theft, including shoplifting, or by robbery involves dishonesty and

that these crimes are per se admissible for impeachment purposes under ER 609(a)(2). While we agree that assaultive crimes usually do not involve dishonesty but instead involve "acts of violence which may, in fact, 'result from a short temper, a combative nature, extreme provocation, or other causes, [and] have little or no direct bearing on honesty and veracity'", *State v. Thompson,* 95 Wn.2d 888, 891, 632 P.2d 50 (1981) (quoting *Gordon v. United States, supra* at 940), we include robbery as per se admissible under ER 609(a)(2) because it is not purely an assaultive crime, but also involves the larcenous taking of property.

We bear in mind that in *State v. Burton,* 101 Wn.2d 1, 676 P.2d 975 (1984), this court expressed concern that we not view dishonesty as inhering in most any crime, for if we did, ER 609(a)(1) would be rendered superfluous. We have not done so here; at the least, assaultive felonies other than robbery would not usually fall within ER 609(a)(2), but instead must be considered under ER 609(a)(1).

Further, a major reason found in *Burton* to support a narrow construction of ER 609(a)(2) was that a defendant faced with prior conviction evidence is faced with a "Hobson's choice": either refuse to testify and lose any benefit of presenting his or her side of the story as is the defendant's right, or testify and risk the effect of the inherent prejudice associated with prior conviction evidence. *Burton,* at 9; E. Cleary, *McCormick on Evidence* § 43, at 99–100 (3d ed. 1984); Note, *To Take the Stand or Not To Take the Stand: The Dilemma of a Defendant With a Criminal Record,* 4 Colum. J.L. & Soc. Probs. 215, 218 (1968). However, as hard as this choice may be for a defendant, requiring such choices is not inconsistent with the criminal process, as we discussed elsewhere in this opinion. Further, we do not lose sight of the principle that a defendant has no right to testify free of impeachment, and that the purpose of ER 609(a)(2) is to permit admission of evidence affecting the credibility of the witness. Society has an interest here in evaluating the credibility of defendants with criminal convictions affecting their credibility and in

preventing a defendant with a criminal past from presenting himself or herself as an "innocent among thieves." *See State v. Koloske,* 100 Wn.2d 889, 897, 676 P.2d 456 (1984).

We find no error in the trial court's ruling admitting the prior theft convictions. Normally, this conclusion would end our analysis of the issue. However, the Court of Appeals concluded below that the trial court erroneously ruled admissible the felony theft conviction; the Court of Appeals then applied the constitutional harmless error standard which we set forth in *State v. Jones,* 101 Wn.2d 113, 124–25, 677 P.2d 131 (1984). Our review of this case has included a careful review of this aspect of ER 609(a) rulings. Upon reconsideration, we hold that the harmless error standard for erroneous ER 609(a) rulings should be the same nonconstitutional harmless error standard which we apply to ER 404(b) rulings. Thus, erroneous ER 609(a) rulings are not reversible error "unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." (Citations omitted.) *State v. Smith,* 106 Wn.2d 772, 780, 725 P.2d 951 (1986). We overrule the holdings in *Jones* and *State v. Harris,* 102 Wn.2d 148, 685 P.2d 584 (1984), adopting a constitutional harmless error standard for erroneous ER 609(a)(1) and (2) rulings.

Our adoption of a nonconstitutional error standard for ER 609(a) rulings results from our recognition that while a defendant's decision to testify may be affected by the possibility of impeachment by prior conviction, as we have said a defendant has no constitutional right to testify free of such impeachment. Further, applying a constitutional harmless error standard to ER 609(a) rulings while applying a nonconstitutional harmless error standard to ER 404(b) rulings could result in the anomalous situation where the same prior conviction is erroneously admitted under ER 404(b) and erroneously ruled admissible under ER 609(a)—the first error would be reviewable under a nonconstitutional harmless error standard, while the second error would be reviewable under a constitutional harmless

error standard. Moreover, while not addressing the question of what harmless error standard to apply, the United States Supreme Court in *Luce* said that a rule 609(a) ruling is "a question not reaching constitutional dimensions". *Luce v. United States,* 469 U.S. 38, 43, 83 L. Ed. 2d 443, 105 S. Ct. 460 (1984).

Finally, we turn to Brown's remaining issue. He claims that the trial court erred by ruling that the State could use certain statements he made to his parole officer for impeachment purposes. Brown moved prior to trial to preclude the State from presenting the officer's testimony. At the hearing on this matter, the officer testified that Brown called him one afternoon after his arrest and asked to discuss family matters. The parole officer met Brown in an interview room at the jail and discussed Brown's family matters with him. When the officer noted that it was a miracle that Brown had not been beaten or killed because of his succession of criminal involvements, Brown laughed and said "'I could tell you some things' or words to that effect." Report of Proceedings, at 54. The officer laughed and said "Go ahead." Report of Proceedings, at 54. Brown said something to the effect "'Oh, you'll probably use this against me.'" Report of Proceedings, at 54. The officer testified that he told Brown that he didn't think anyone was particularly interested in his M.O., and then, in the officer's words, Brown described how he had "pulled these scams off in the past. . . ." Report of Proceedings, at 55.

The trial court ruled that if Brown took the stand and denied on direct examination engaging in conduct such as the parole officer had related, the State could call the officer and elicit the statements made by Brown to him. The court declined to make a final ruling on the ground that whether the statements would be admitted for impeachment purposes would depend on Brown's testimony on direct examination. Thereafter the court was informed that Brown would not take the stand and the parole officer was dismissed.

Brown argues that because he was not advised of his constitutional rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), the trial court erred by ruling that the statements were admissible to impeach him. Although poorly stated in his petition for review, Brown argued in his brief to the Court of Appeals that his statements were not voluntary.

Assuming that the discussion Brown initiated with the parole officer was "custodial interrogation," the officer's failure to inform Brown of his rights as required by *Miranda* did not preclude the State's introduction of the evidence for impeachment purposes provided the statements were otherwise voluntary. *Harris v. New York,* 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971); *State v. Hubbard,* 103 Wn.2d 570, 575, 693 P.2d 718 (1985). Brown's argument that the statements are inadmissible because he was not advised of his constitutional rights is without merit. Brown called the parole officer to come to the jail to discuss family matters. He thereafter said he could tell the parole officer "some things." The officer's statements to Brown to "go ahead," and that he did not believe anyone would be interested in Brown's M.O. were not enough to render the interview coercive.

In declining to make a final ruling on the motion in limine, the trial court correctly reasoned that whether the evidence would be admissible depended on the nature of Brown's actual testimony on direct examination. The court did describe generally the circumstances under which the evidence would be admissible. We find no error.

Affirmed.

CALLOW, C.J., and ANDERSEN and DURHAM, JJ., concur.

UTTER, J. (concurring in the result)—I agree with the result in Justice Brachtenbach's opinion in affirming the Court of Appeals. I cannot agree, however, with the approach in Justice Brachtenbach's opinion. The overruling in Justice Brachtenbach's opinion of seven recent cases is

not necessary when the same ends could be reached by following the analysis of the Court of Appeals. *See State v. Brown,* 47 Wn. App. 565, 736 P.2d 693 (1987). With one exception, I would adopt this analysis.[6]

The opinion by Justice Brachtenbach would overrule *State v. Pam,* 98 Wn.2d 748, 659 P.2d 454 (1983); *State v. Koloske,* 100 Wn.2d 889, 676 P.2d 456 (1984); and *State v. LeFever,* 102 Wn.2d 777, 690 P.2d 574 (1984), which hold that a defendant must make a timely offer of proof in order to contest on appeal the denial of a motion in limine excluding impeachment evidence under ER 609(a)(2). Instead, following *Luce v. United States,* 469 U.S. 38, 83 L. Ed. 2d 443, 105 S. Ct. 460 (1984), the opinion by Justice Brachtenbach would have the criminal defendant take the stand and be subjected to the impeaching evidence in front of a jury before being able to appeal the issue.

There is a serious problem in this requirement, one not addressed by the United States Supreme Court nor today's opinion by Justice Brachtenbach. Under the fifth amendment to the United States Constitution and Const. art. 1, § 9, criminal defendants have the right not to testify at their own trial. *Cf. Seattle v. Hawley,* 13 Wn.2d 357, 124 P.2d 961 (1942) (no inference to be drawn from defendant's failure to testify). By forcing a criminal defendant to testify in order to preserve objections to an in limine ruling on appeal, his right to remain silent is affected. Further, if the evidence was wrongly introduced, then

> [a] defendant must choose between trial before a jury prejudiced against him as a result of the improper admission of impeaching convictions, or an appeal before a court which will not hear his claim that the ruling below was erroneous.

*People v. Collins,* 42 Cal. 3d 378, 398, 722 P.2d 173, 187, 228 Cal. Rptr. 899 (1986) (Broussard, J., concurring and

---

[6]I differ with the Court of Appeals over the treatment of one issue: that of looking to the underlying facts of crimes involving theft to determine admissibility under ER 609(a)(2). I believe this analysis is contrary to our rule developed in *State v. Newton,* 109 Wn.2d 69, 77–78, 743 P.2d 254 (1987).

dissenting). A constitutional right, then, becomes manipulated by new demands of trial tactics.

This problem does not occur when the defendant is able to preserve his objection for appeal by an offer of proof. It may be true, as pointed out by the Supreme Court in *Luce,* that an offer of proof may differ in content from actual testimony subject to cross examination. *Luce,* at 41 n.5. That problem can be remedied by methods other than forcing a defendant to testify before a jury when he would choose to remain silent. A defendant could make an extended offer of proof or could, as suggested by three members of the California Supreme Court, testify in camera after the prosecution closed its case. *See Collins,* 722 P.2d at 187 (Broussard, J., concurring and dissenting). As the opinion by Justice Brachtenbach itself points out, we are not compelled to follow federal precedent on the rules of evidence. Opinion by Justice Brachtenbach, at 547–48; *cf. Orwick v. Seattle,* 103 Wn.2d 249, 692 P.2d 793 (1984). Other states have chosen not to follow *Luce. See, e.g., People v. Contreras,* 108 A.D.2d 627, 485 N.Y.S.2d 261 (1985); *State v. McClure,* 298 Or. 336, 692 P.2d 579, 584 n.4 (1984). I would rather adopt a rule which serves the policy interest identified by the opinion by Justice Brachtenbach and yet protects the rights of the defendant.

I also take issue with the opinion by Justice Brachtenbach over its rejection of the rule in *State v. Burton,* 101 Wn.2d 1, 676 P.2d 975 (1984), as well as the rule adopted by a majority of this country's federal courts. See opinion by Justice Brachtenbach, at 547 footnote 3. The opinion by Justice Brachtenbach concludes instead that all crimes involving theft are per se dishonest and automatically admissible under ER 609(a)(2). Instead of following the federal legislative history behind ER 609, the opinion by Justice Brachtenbach engages in its own "plain language" interpretation of the rule. Thus, this new construction of ER 609 is not based on the reports of those who drafted it but on passages from Webster's dictionary and the intuition of Justice Brachtenbach's opinion. By so doing, the

opinion by Justice Brachtenbach would make no distinction—for the credibility–driven purposes of ER 609(a)(2)—between the person who steals a loaf of bread and the one who swindles his victims out of their savings. Further, by allowing the admission of crimes such as robbery, burglary, theft, and perhaps kidnapping under the per se standard of ER 609(a)(2), the opinion by Justice Brachtenbach effectively emasculates the balancing test in 609(a)(1).

The opinion by Justice Brachtenbach and I differ about the connotations of the word "dishonesty" in this context. Because this term is not unambiguous, I think it best to refer to the federal legislative history behind it. That history indicates that the offenses intended to be admissible under the rule are those involving active deception. *See State v. Newton,* 109 Wn.2d 69, 77–78, 743 P.2d 254 (1987); *State v. Burton,* 101 Wn.2d at 1–2.

I also take issue with Justice Brachtenbach's opinion in its overruling *State v. Jones,* 101 Wn.2d 113, 677 P.2d 131 (1984), to the extent that case establishes a constitutional harmless error standard for the erroneous admission of evidence under ER 609. The admission of past convictions for impeachment purposes has an impact upon a defendant's decision to testify. A defendant's right to testify—as well as his right to remain silent—is of federal as well as state constitutional magnitude. *See* U.S. Const. amend. 5; Const. art. 1, §§ 9, 22. Any ruling having an effect on these rights is consequently of constitutional proportions. The opinion by Justice Brachtenbach reasons its result is proper by stating that a defendant has no right to testify free of impeachment. Opinion by Justice Brachtenbach, at 554–55. While this is true, the statement in Justice Brachtenbach's opinion does not fully acknowledge that its rule puts pressure on a defendant's decision to testify or to remain silent, thus affecting constitutional rights.

The opinion by Justice Brachtenbach further declares that there is no logic behind recognizing a constitutional error standard for ER 609 while maintaining a nonconstitutional standard for ER 404. There is an answer to the

puzzle in Justice Brachtenbach's opinion. ER 609 directly affects defendant during his testimony, while ER 404 does not. Therefore, the former puts pressure on the rights to testify and to remain silent. Because the latter does not, it is logical to retain two standards for these two rules.

I do agree with the opinion by Justice Brachtenbach, however, in overruling *State v. Laureano,* 101 Wn.2d 745, 682 P.2d 889 (1984). Insofar as that case allows the presumptive admission of past convictions under ER 609 after earlier admission under ER 404(b), it has no place in our body of evidence law.

On the basis of the above, then, I concur with the opinion by Justice Brachtenbach in its result but not its reasoning.

DOLLIVER and SMITH, JJ., concur with UTTER, J.

PEARSON, J. (concurring in the result)— █ I agree with the concurrence to the extent it takes issue with the conclusion in Justice Brachtenbach's opinion that all crimes involving theft are per se dishonest. In reaching such a conclusion, the opinion by Justice Brachtenbach implicitly ignores the purpose behind ER 609(a)(2). That rule allows the admission of evidence of past crimes only for the purpose of impeaching the defendant's *credibility.* As the concurrence notes, when the defendant's veracity is the issue, the per se rule in Justice Brachtenbach's opinion may wholly fail to serve the theoretical purpose of impeachment, while ensuring prejudice in the eyes of the jury.

Despite my agreement with this portion of the concurrence, I am constrained to write separately to note the error it contains regarding the issue of the appealability of an erroneous ER 609(a)(2) ruling. The concurrence argues that requiring the defendant to actually take the stand before being able to appeal the ruling violates Fifth Amendment guaranties. That is not the case.

The concurrence frames the issue as one of "forcing" the defendant to testify in order to preserve error. In point of fact, impeachment evidence is admissible only in the

instance where the defendant actually takes the stand. Thus, where a defendant does not wish to testify, an improper in limine ruling simply does not affect that defendant. The rule in Justice Brachtenbach's opinion does nothing more than confront this defendant with a decision every criminal defendant must ultimately reach; that is, whether to testify.

With these explanations, I concur in the result.

DORE, J., concurs with PEARSON, J.

After modification, further reconsideration denied March 1, 1990.